ELLIOT KASTNER, Respondent, *v.* ROBERT GOVER, Appellant.

First Department, November 21, 1963.

*Ellis J. Freedman* of counsel (*Abraham Friedman* with him on the brief; *Bernays & Eisner,* attorneys), for appellant.

*Max H. Rose* of counsel (*Jerome B. Lurie* with him on the brief; *Cohn & Glickstein,* attorneys), for respondent.

RABIN, J.   The plaintiff, a producer in the theatrical field, alleges that he entered into an agreement with the defendant, an author, whereby, in consideration of $1,000, defendant granted plaintiff an option to purchase the world-wide dramatic and theatrical rights in a novel authored by defendant.   The option was to continue for nine months, subject to another nine-month extension upon the payment by plaintiff to defendant of an additional $500.   Provision for further extension was made in the event plaintiff had caused a theatrical adaptation to be written, had retained the services of a director or star and had succeeded in leasing a theatre.   Upon the exercise of the option it is alleged that the rights to the novel would be transferred to the plaintiff and the production of the play, based thereon, would be governed by the "Production Contract" of the Dramatists Guild.   It is further alleged that the plaintiff "duly

performed all the terms and conditions of the Option Agreement '' insofar as possible in the light of defendant's refusal to perform.

In his prayer for relief plaintiff seeks specific performance of the agreement and an injunction restraining the defendant from disposing of the rights to the novel in derogation of plaintiff's rights.

Defendant made a motion at Special Term for judgment on the pleadings on the ground that the alleged agreement is unenforcible under the Statute of Frauds. Special Term denied the motion holding, in effect, that while the agreement alleged is within the Statute of Frauds, a letter written by defendant to plaintiff (annexed to the bill of particulars) was a writing sufficient to evidence the existence of an agreement between the parties and thus satisfy the requirements of the statute.

I agree with Special Term that the Statute of Frauds is applicable to the agreement alleged but I do not agree that the letter referred to satisfies the requirements of the statute. In contending that the agreement is not within the statute, plaintiff argues that he could have produced and begun presentation of the play within one year and thus have fully performed under the agreement. Overlooked by the plaintiff, however, is the fact that the agreement, as alleged, would entitle defendant, upon the assignment of his rights, to 50% of '' all royalties and other sums payable to the Author pursuant to the Production Contract, including fifty (50%) per cent of all sums derived from the disposition of the motion picture, television and other subsidiary rights '' over the 28-year term of the copyright. Such continuing obligation to make payments to defendant makes this alleged agreement incapable of performance within one year within the contemplation of the holdings in *Martocci* v. *Greater New York Brewery, Inc.* (301 N. Y. 57) and *Zupan* v. *Blumberg* (2 N Y 2d 547). The plaintiff's obligation to pay royalties to defendant would continue so long as third persons controlling the movie and television rights, etc., would continue to exhibit the same.

It is also argued that the alleged agreement does not come within the Statute of Frauds because the option agreement itself permits of performance within one year. It is urged that if the plaintiff should fail to exercise the option within the nine-month period that would constitute performance of the option agreement by its terms and in consequence the agreement of option with all that it entailed when made is not within the statute. I doubt that a party could be bound without a writing through the medium of an oral option agreement, the exercise

of which would hold that party to obligations that could not be terminated within the period of one year. However, assuming that the plaintiff be correct in his statement that the failure to exercise the option agreement in this case could constitute a performance within one year, it must be noted that the right to complete such performance within one year rests solely with the plaintiff. Thus, from the defendant's point of view, "it is illusory * * * to consider the contract terminable or performable within one year", and such fact and such possibility of performance does not take the agreement out of the statute (*Harris* v. *Home Indemnity Co.*, 6 A D 2d 861).

While finding the alleged agreement to be within the statute, Special Term held that the statutory requirements thereof were satisfied by the letter written by defendant to plaintiff. This letter reads as follows:

January 19, 1963

Dear Sirs:

I haven't signed the contract you proposed December 19 because I find that it isn't the contract you proposed to propose.

I've told Elliot Kastner as much in telephone conversations. He has suggested I submit my objections to the proposed contract to Jerome B. Lurie [plaintiff's attorney]. Elliot also mentioned something about litigation.

I have such a lack of enthusiasm for litigation that I fear the enthusiasm I had for Elliot's ideas about how the novel could be done as a play has left me.

If you wish to pursue this matter further, will you please contact my lawyer, Mr. Abraham Friedman, of Bernays and Eisner.

Respectfully,<br>/s/ Robert Gover<br>Robert Gover

In relying upon this letter to take the alleged agreement out of the Statute of Frauds, Special Term reasoned that the letter could be "construed as noting the fact that the parties had theretofore come to an agreement, but that what was proposed * * * did not embody that prior agreement."

I cannot accept that view of the letter. Contrary to Special Term's view I conclude that rather than evidencing the existence of an agreement it clearly negatives the same. All that may be reasonably gleaned from the letter is that there had been discussions between the parties relative to an agreement. The statement that defendant had not signed the proffered contract "because I find that it isn't the contract you proposed to propose" falls far short of a written memorandum signed by the party to be charged as required by the statute.

Even were I to agree with Special Term that the letter could be construed as evidencing the existence of an agreement theretofore entered into, it would not suffice to satisfy the require-

ments of the statute. For a writing signed by the party to be charged to be so sufficient, it must also include the terms of the contract which the parties purportedly made (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310, 314). The letter relied upon contains none of the material terms of the agreement alleged nor does it adopt—as distinguished from reject—by reference any other written document containing such terms.

Accordingly, the order denying judgment on the pleadings should be reversed on the law and the motion granted, with costs.

BOTEIN, P. J., BREITEL, EAGER and STEUER, JJ., concur.

Order, entered on July 2, 1963, denying judgment on the pleadings unanimously reversed, on the law, with $20 costs and disbursements to the appellant, and the motion granted, with $10 costs.