The BANK OF NEW YORK, Plaintiff,

v.

Enriko SASSON, Defendant.

The BANK OF NEW YORK, Plaintiff,

v.

Enriko SASSON and Michael E. Thomas, Defendants.

Nos. 90 Civ. 4860 (MBM), 90 Civ. 4861 (MBM).

United States District Court, S.D. New York.

March 5, 1992.

---

Daniel Wallen, Richard G. Haddad, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for plaintiff Bank of New York.

Michael B. Lewiston, Dennis J. Levasseur, Bodman, Longley & Dahling, Detroit, Mich., for defendants Enriko Sasson and Michael E. Thomas.

## OPINION AND ORDER

MUKASEY, District Judge.

These actions were brought by plaintiff, Bank of New York ("BNY"), to enforce the terms of a personal loan to Enriko Sasson, 90 Civ. 4860 ("Personal Loan Action"), and to enforce the terms of a guaranty executed by defendants Sasson and Michael E. Thomas, whereby they agreed to ensure the payment of all principal and interest on plaintiff's loan to the Techtron Centre Limited Partnership, 90 Civ. 4861 ("Techtron Action"). By Opinion and Order dated September 23, 1991, plaintiff's motions for summary judgment were granted. *Bank of New York v. Sasson*, Nos. 90 Civ. 4860, 90 Civ. 4861, 1991 WL 193706 (S.D.N.Y. September 23, 1991). At that time, judgment was not entered because of defendants' pending motions for leave to add counterclaims. *Bank of New York*, slip op. at 15–17. Those motions are now fully submitted. Plaintiff also has moved for entry of judgment on its claims for repayment pursuant to Fed.R.Civ.P. 54(b).[1] For the reasons set forth below, defendants' motions are denied. Because this disposes of the case, plaintiff's motions need not be addressed.

I.

For current purposes, familiarity with the September 23 Opinion and Order is assumed. To the extent the facts are summarized below, the summary is drawn from defendants' proposed counterclaims and from Sasson's affidavit attached to those counterclaims. In aid of a fair evaluation of the proposed counterclaims, the statements in the attached affidavit are assumed to have been incorporated therein. *Cf. Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2nd Cir.1991); Fed.R.Civ.P. 10(c).

On April 29, 1985, plaintiff's predecessors agreed to lend to Techtron Centre Limited Partnership up to $3.8 million. The original maturity date of the Note was August 27, 1986. Following negotiations, on March 28, 1988, the debtor executed a Restated Note that extended the maturity date to September 27, 1989. (Restated Note p. 1; Sasson Aff. ¶ 46) The Restated Note provides that its terms "may not be modified or terminated orally," and that it "shall be construed and enforced in accordance with the laws of the State of Michigan." (Restated Note p. 2) At the closing on the first Note, defendants executed a full and unconditional guaranty of Techtron's obligations ("Guaranty"). Like the Restated Note, the Guaranty provides that it cannot be modified orally and that it is governed by Michigan law. (Guaranty ¶¶ 6, 8)

As the September 27, 1989 maturity date approached, Sasson and officers of BNY discussed the possibility that BNY would re-underwrite the loan and further extend the maturity date. Defendants maintain that an oral agreement was reached to extend the maturity date to March 27, 1991. (Sasson Aff. ¶ 50)

BNY also granted Sasson an unsecured $3 million line of credit which, according to the Promissory Note, matured on May 30,

---

1. Fed.R.Civ.P. 54(b) provides in pertinent part: When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment.

1990. As with the Techtron loan, the approach of the maturity date generated an exchange of letters and a series of conversations about possible restructuring. (Sasson Aff. ¶¶ 14–22) Sasson maintains that the parties reached an oral agreement to extend the maturity date to May 30, 1991. (Sasson Aff. ¶ 16, 32, 34)

Defendants have moved for leave to add counterclaims, denominated "counts," in both actions. In the Techtron Action, defendants would allege that BNY: breached its oral agreement to extend and re-underwrite the Techtron loan (Count I); breached an implied covenant of good faith and fair dealing in the administration of the Techtron loan (Count II); and induced the detrimental reliance of Sasson, Thomas and Techtron, who did not seek alternative financing due to promises made by BNY to extend the loan (Count III). Similarly, in the Personal Loan Action defendant Sasson would allege that BNY: breached its agreement to extend the line of credit (Count I); breached an implied covenant of good faith and fair dealing in its administration of the line of credit (Count II); and induced the detrimental reliance of Sasson, who did not seek alternative financing due to BNY's promise to extend the loan (Count III).

## II.

◼ Fed.R.Civ.P. 13(f) states: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Courts must read Fed.R.Civ.P. 13(f) together with Fed.R.Civ.P. 15(a), which provides that leave to amend a pleading "shall be freely given when justice so requires." *Banco Para El Comercio Exterior De Cuba v. First Nat'l City Bank*, 744 F.2d 237, 243 (2d Cir.1981). As the Supreme Court has explained: "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure defi-

ciencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave to amend should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

◼ However, leave to replead should be denied if the proposed counterclaims are meritless and therefore amendment would prove futile. *Albany Ins. Co. v. Esses*, 831 F.2d 41, 45 (2d Cir.1987), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2nd Cir.1989). If the claims would be subject to dismissal under Fed.R.Civ.P. 12(b)(6), the court should refuse to grant leave to amend rather than assent and then await a motion to dismiss. *Northwestern National Ins. Co. v. Alberts*, 717 F.Supp. 148, 153 (S.D.N.Y.1989); 3 *Moore's Federal Practice* ¶ 15.08[4] (1991). Accordingly, the proposed counterclaims should be construed in the light most favorable to the party moving to amend, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and leave to amend should be denied if it appears that the movant can prove no set of facts in support of the proposed claims that would entitle him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### A. *The Contract Claims*

◼ In the Personal Loan Action, Sasson alleges that "[p]rior to May 30, 1990, counter-defendant orally agreed to extend the maturity date of the line of credit Note" to May 30, 1991. (Pers. Cl. ¶ 34; Sasson Aff. ¶¶ 16, 32, 34)[2] Sasson claims that as a result of BNY's breach of this alleged agreement, he suffered damages in excess of $50,000. (Pers. Cl. ¶ 37)

Under New York law, which governs the Personal Loan Action, the statute of frauds requires that an agreement which "[b]y its terms is not to be performed within one

---

**2.** Defendants have submitted documents entitled "Proposed Counterclaims." Citations to these documents are abbreviated "Pers. Cl." or "Tech. Cl."

year from the making thereof" must be in writing in order to be enforceable. N.Y.Gen.Oblig. Law § 5–701 (McKinney's 1989). An oral agreement, such as the alleged extension, which extends the time of payment on a note for a period of more than one year from the making of that agreement is unenforceable under this section. *Marcus v. C.I.F., Inc.*, 26 A.D.2d 923, 274 N.Y.S.2d 713 (1st Dept.1966); *Westinghouse Electric Supply Co. v. Syracuse Auto Supply Corp.*, 233 A.D. 788, 250 N.Y.S. 886 (4th Dept.1931). Defendant argues, however, that because he could have satisfied his obligations under the line of credit within one year, the alleged oral agreement is outside the statute. This argument ignores that, according to the alleged oral agreement, plaintiff had a continuing obligation to "fund the line of credit" until May 30, 1991, regardless of whether defendant maintained an outstanding balance. (Sasson Aff. ¶¶ 16, 28, 32, 34) "In such cases [plaintiff's] liability endures.... Under such circumstances it is illusory, from the point of view of [plaintiff] to consider the contract terminable or performable within one year." *Belfert v. Peoples Planning Corp.*, 22 Misc.2d 753, 199 N.Y.S.2d 839, 842 (Sup.Ct.1959), *aff'd*, 11 A.D.2d 760, 202 N.Y.S.2d 101 (1st Dept. 1960). Because plaintiff could not have performed fully within one year, the alleged oral agreement is unenforceable. *Kastner v. Gover*, 19 A.D.2d 480, 244 N.Y.S.2d 275, 277–78 (1st Dept.1963), *aff'd*, 14 N.Y.2d 821, 251 N.Y.S.2d 472, 200 N.E.2d 455 (1964); *Metro–Goldwyn–Mayer, Inc. v. Scheider*, 75 Misc.2d 418, 347 N.Y.S.2d 755, 762 (Sup.Ct.1972).

■ In the Techtron Action, defendants propose also to add a claim against BNY for breach of an alleged oral agreement to re-underwrite and extend the loan. (Tech. Cl. ¶ 31, 33) However, the Restated Note specifies that it "may not be modified or terminated orally," and the Guaranty provides that it "cannot be changed or terminated orally." Under Michigan law, courts must "enforce the terms of the contract as written ... [and i]f the language ... is unambiguous, it must be considered 'in its plain and easily understood sense.' " *Up-*john Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392, 397 (1991) (citing *Eghotz v. Creech*, 365 Mich. 527, 530, 113 N.W.2d 815 (1962); quoting *Metropolitan Property & Liability Ins. Co. v. DiCicco*, 432 Mich. 656, 710, 443 N.W.2d 734 (1989)). The Guaranty and Restated Note unambiguously direct that they cannot be modified orally. Therefore, the claim that plaintiff breached an oral agreement to modify the terms of the Techtron loan is without merit.

**B.** *The Implied Covenant of Good Faith and Fair Dealing*

Proposed Count II in both actions alleges that BNY "had a duty to deal with [defendants] honestly, reasonably, fairly, in good faith, and in a manner constituting fair dealing, and to administer the [loans] in a prudent and reasonable manner." (Tech. Cl. ¶ 36; Pers. Cl. ¶ 39) Defendants contend that BNY's administration of the loans and its actions following maturity constituted breach of the implied covenant of good faith and fair dealing.

■ New York recognizes that "in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79 (1933); *Components Direct, Inc. v. European American Bank and Trust Co.*, 175 A.D.2d 227, 572 N.Y.S.2d 359, 361 (2nd Dept.1991). However, in the Personal Loan Action, defendant fails to allege any interference with the benefits promised under the line of credit. He does allege that on February 9, 1990, before the May 30, 1990 maturity date, his attempt to draw on the line of credit was denied. (Sasson Aff. ¶ 18, 19) However, the Promissory Note provides that "[i]t shall be an Event of Default if ... the Borrower or any partnership of which the Borrower is a partner defaults in the payment when due of, or otherwise defaults in the performance of, any obli-

gation to the Bank." (Promissory Note p. 2) By February 9, 1990, the loan to the Techtron Centre Limited Partnership, of which Sasson was a general partner, was already past due; as discussed above, the alleged agreement extending the maturity date of that loan was invalid. (*See* II–A, *supra*) As a result, under the quoted provision, an event of default had occurred and, pursuant to the terms of the Promissory Note, BNY had the right to refuse further funds. Therefore, defendant has failed to allege that BNY interfered with any existing right to full performance during the term of the loan agreement.

■ Defendant relies also on BNY's conduct during the negotiations to extend the line of credit. However, the implied covenant of good faith and fair dealing is limited to performance under a contract and does not encompass future dealings or negotiations between the parties. It obligates the promisor only to allow the promisee to reap the benefits of the promised performance; it does not obligate the promisor to make future promises. *See Holmes Protection of New York, Inc. v. Provident Loan Society of New York*, —— A.D. ——, 577 N.Y.S.2d 850, 851 (1st Dept.1992) (The proposed "counterclaims for breach of the implied covenant of good faith and fair dealing are insufficient since they do not allege that plaintiff sought to prevent defendant's performance of the contracts or to withhold its benefits from defendant.") Moreover, so long as the promisee is allowed to reap the benefits of the contract, the implied covenant of good faith does not require the promisor to take actions contrary to his own economic interest such as extending, or even negotiating the possible extension of, a risky loan. *See Van Valkenburgh, N. & N., Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 45, 330 N.Y.S.2d 329, 281 N.E.2d 142, *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972). Therefore, notwithstanding that plaintiff may have refused to extend the loan or may have reneged on an oral promise to extend the loan, defendant has failed to state a claim under the implied covenant of good faith and fair dealing.

■ Defendants' only allegation regarding performance under the Techtron loan contract is that BNY "inexplicably stopped sending monthly interest statements." (Tech. Cl. ¶ 15) There is no allegation that BNY interfered with Techtron's use of the funds or any other agreed upon benefit. It appears that defendants' claim is based on BNY's conduct after maturity. Regardless of the basis of defendants' claim, Michigan does not recognize a cause of action based on an implied covenant of good faith. *See Hearn v. Rickenbacker*, 428 Mich. 32, 37, 400 N.W.2d 90 (1987); *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich.App. 194, 197, 480 N.W.2d 910, 911–12 (1991); *Dahlman v. Oakland University*, 172 Mich.App. 502, 507, 432 N.W.2d 304 (1988). Moreover, even if Michigan did recognize such a cause of action, defendants have failed to state a claim under the accepted definition of a cause of action based on the implied covenant of good faith and fair dealing because they have failed to plead interference with Techtron's receipt of promised benefits, and have relied on BNY's conduct following expiration of the contract. *See* 2 *Farnsworth on Contracts* § 7.17 (1990); 3 *Corbin on Contracts* § 540 (1960) (and cases cited therein).

### C. *The Promissory Estoppel Claims*

■ In both actions, defendants claim that they relied to their detriment on BNY's promise to extend the loans. As a result, they request a judgment declaring that BNY "is estopped to deny the existence of the agreement[s] ... and is estopped from taking any actions contrary to its agreement[s]." (Pers. Cl. ¶ 47, Tech. Cl. ¶ 44) These claims are moot.

In the September 23 Opinion, plaintiff's motions for summary judgment were granted because even assuming that the alleged oral promises had been made, the maturity dates of the loans had passed, and both were due and payable. *Bank of New York*, slip op. at 14. The Opinion notes that in the Techtron Action, defendants contend the maturity date was extended until March 27, 1991 and, in the Personal Loan Action, Sasson contends that BNY

agreed to extend the maturity date to May 30, 1991. *Bank of New York,* slip op. at 14. Whether or not such promises were actually made, defendants have already received the benefits to which they were entitled on their version of the facts. *Id.* Therefore, a judgment estopping BNY from denying the existence of the alleged oral agreements or behaving contrary to those agreements would be meaningless.

\*   \*   \*   \*   \*   \*

Because the proposed counterclaims fail to state claims upon which relief can be granted, amendment would be futile. Therefore, defendants' motions are denied. *See Albany Ins. Co.,* 831 F.2d at 45. Plaintiff is to settle judgment in both actions on 10 days' notice.

SO ORDERED.