459 S.E.2d 343

194 W.Va. 66

**Nancy Yeager SIPP and Earl Stephen Yeager, as Co–Executors of the Estate of Earl Yeager, Plaintiffs Below, Appellants**

v.

**Emily YEAGER, Defendant Below, Appellee.**

No. 22715.

Supreme Court of Appeals of West Virginia.

Submitted May 16, 1995.

Decided June 15, 1995.

---

J.W. Feuchtenberger and Kelli L. Harshbarger, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for appellants.

Joseph A. Colosi, Welch, for appellee.

PER CURIAM:

This case involves a dispute over Earl Yeager's estate between Mr. Yeager's children, Nancy Yeager Sipp and Earl Stephen Yeager, M.D., the appellants who are co-executors under Mr. Yeager's will and Mr. Yeager's widow, Emily Yeager, the appellee. Ms. Sipp and Dr. Yeager appeal an order of the Circuit Court of McDowell County removing them as co-executors, holding the antenuptial agreement between Mr. and Mrs. Yeager to be void *ad initio* and holding Mr. Yeager's will to be valid. On appeal, Ms. Sipp and Dr. Yeager maintain that the circuit court erred in removing them as co-executors and in voiding the antenuptial agreement. Ms. Sipp and Dr. Yeager urge this Court to remand the case with directions to remove Mrs. Yeager as manager of the corporate estate assets and appoint a Special Receiver. After reviewing this case's record, we find that the circuit court's decision is an interlocutory rather than a final order and therefore, we dismiss this appeal as improper before this Court.

### I

Earl Yeager died testated on March 1, 1992. Earl Yeager was survived by his wife, the appellee, and his three children by his first wife, who is also deceased. After a long courtship of about nine years, Mr. and Mrs. Yeager were married on June 28, 1971. Three days before their wedding, Mr. Yeager showed an antenuptial agreement to Mrs. Yeager. On the morning before their wedding, Mrs. Yeager signed the antenuptial agreement, which she alleges that although she had the opportunity, she did not read or discuss. The agreement does not disclose either party's assets. Mrs. Yeager testified that it was not until after her husband's death that she received and read a copy of the agreement. The agreement states, in pertinent part:

... each of the parties ... hereby agrees to waive, and does hereby waive, all and every right whatsoever which he or she might have or acquire by law by such marriage in any and all property of every kind and character, real, personal or mixed, now owned or which may be hereafter acquire by the other party ... [and that each parties' property] shall pass to her or his heirs-in-law, devisees or legatees in precisely the same manner and with the same effect as through the marriage were never consummated.

Although the agreement indicates that each will maintain his and her property separately, Mrs. Yeager testified that she and Mr. Yeager had joint checking accounts, made joint furniture purchases, signed personal guarantees for business loans and jointly financed the purchase of a bulldozer. Mrs. Yeager said that she deposited the money she inherited from her aunt and uncle into a joint account. Mrs. Yeager also testified that she bought supplies for a farm owned by Mr. Yeager, loaned Mr. Yeager's business $70,000 that she inherited from her aunt and uncle, and at Mr. Yeager's suggestion, paid $30,000 to improve some rental property owned individually by one of Mr. Yeager's corporations.

Mr. Yeager's will, signed on October 11, 1991, was prepared at the direction of Ms. Sipp. Ms. Sipp testified that based on numerous conversations with her father, she had her lawyer in New Jersey prepare Mr. Yeager's will. The will was returned to Ms. Sipp who sent it to Mr. Yeager who, in turn, signed it before disinterested witnesses.

Mr. Yeager's will appoints Ms. Sipp and her brother, Dr. Yeager, co-executors. Under Mr. Yeager's will, Mrs. Yeager was to receive all the Yeager Ford Sales, Inc. shares, subject to the two following conditions:

a. All money owed by Yeager Ford Sales, Inc., to Yeager, Inc., must be paid in full; and

b. All debts which have been incurred by Yeager, Inc. on behalf of, and for the benefit of, Yeager Ford Sales, Inc., must be fully repaid by Yeager Ford Sales, Inc. to Yeager, Inc.

Dr. Yeager, one of the appellants, was to receive all of Mr. Yeager's personal effects and furniture and the will contained some specific bequests to Mr. Yeager's sisters. The residual beneficiaries of Mr. Yeager's estate are his three children, Ms. Sipp, Dr. Yeager, and their sister, Sally Yeager Goings.

The major assets of Mr. Yeager's estate include: all the stock shares in two corporations, Yeager Ford Sales, Inc., an automobile dealership, and Yeager, Inc., a real estate holding company for rental property, a farm, some stock in local banks and proceeds for life insurance policies.

The record indicates that numerous problems arose during the administration of the estate. One of Mr. Yeager's corporations, Yeager Ford Sales, Inc., which was managed by Mrs. Yeager, owed substantial money to various banks, the Ford Motor Company, and Yeager, Inc., Mr. Yeager's real estate holding company. Mr. and Mrs. Yeager personally guaranteed the payment of some of the dealership's debts.[1] Mr. and Mrs. Yeager borrowed against several of Mr. Yeager's life insurance policies to assist the dealership and Mrs. Yeager loaned the dealership $70,000 of her inherited money. Based on this bleak picture, the co-executors closed the dealership over Mrs. Yeager's protests. The co-executors maintain that the dealership was a drain on the estate's assets and Mrs. Yeager claimed that the dealership was slowly reducing its debt.

The parties argued over the management of Yeager, Inc. Mrs. Yeager alleges that the co-executors failed to make necessary repairs to the rental properties, failed to pay real estate taxes and other fees, failed to pay for utilities for the rental properties and refused to pay her for her management services. The co-executors allege that Mrs. Yeager set

---

**1.** On October 1, 1993, the collection manager of the First National Bank of Bluefield testified about two outstanding loans to Yeager, Inc. and Yeager Ford Sales, Inc. in the amounts of $143,- 452.85 and $120,547.41, respectively, that were secured by personal guarantees from Mr. and Mrs. Yeager.

up a separate account for Yeager, Inc., bypassing the estate, thereby, removing the corporation's transactions from their knowledge. The parties also disagreed over whether the maintenance costs exceed the rental income for various rental properties and whether the estate should charge rent for the house in which the family of Mrs. Yeager's daughter is living that was improved with $30,000 of Mrs. Yeager's personal money.

The parties disagreed on the classification of various items. Believing that certain furniture at Mr. Yeager's farm was part of his personal property that was bequeathed to Dr. Yeager, Ms. Sipp and Dr. Yeager removed some furniture. Mrs. Yeager maintains that because certain of these items were purchased jointly by Mr. Yeager and her, she, as the surviving entity-in-common and not Dr. Yeager, is entitled to them. The parties also disagree about the ownership of various items on the farm, which Ms. Sipp and Dr. Yeager attempted to include with their sale of the farm. One of these items is a bulldozer, which Mrs. Yeager claims was jointly purchased, jointly financed and therefore, now her personal property. Another ownership dispute concerns an antique car, that Ms. Sipp shipped to her New Jersey home. Mrs. Yeager alleges that because the antique car was titled to Yeager Ford Sales, Inc., the car was not part of Mr. Yeager's personal property. Mrs. Yeager also alleges that several vehicles and tools on the farm were the property of Yeager Ford Sales, Inc. Mrs. Yeager also maintains that the draperies in the farmhouse were a Christmas present to her from Mr. Yeager.

The proceeds from Mr. Yeager's life insurance policies also may be in dispute. The record is not clear if all the insurance money due the estate was paid to the estate. The proceeds of two policies that listed Yeager, Inc. or Yeager Ford Sales, Inc., as the beneficiary were received by Mrs. Yeager who deposited the proceeds in accounts for the respective corporations. Some of the insurance policies were borrowed against and the proceeds used by Yeager's Ford Sales, Inc.

Apparently Mr. Yeager's safe deposit box was opened by the co-executors without the presence of a disinterested party. No inventory was made of the box's contents. Dr. Yeager testified that the coins in the box were part of his childhood collections and were never owned by his father.

Another dispute concerns the insurance proceeds from Mr. Yeager's ring, which was lost shortly after his death. According to Mrs. Yeager, because the ring was a present from her and she paid the insurance premiums, she is entitled to the insurance proceeds.

Mrs. Yeager also notes that the co-executors have failed to file an appraisement of the estate. Ms. Sipp and Dr. Yeager allege that Mrs. Yeager objects to their draft appraisement and Mrs. Yeager alleges that she does not object to the filing of the appraisement.

On February 19, 1993, Ms. Sipp and Dr. Yeager, as co-executors, sought an injunction to compel Mrs. Yeager to relinquish control of Yeager Ford Sales, Inc. and Yeager Inc., and to appoint John Hurd, Jr. as a special receiver. In the accompanying complaint, the co-executors requested the circuit court to find that Mrs. Yeager failed to satisfy the conditions precedent for her ownership of Yeager's Ford Sales, Inc., and that the rights to the corporation's stock be vested in the co-executors.

On March 12, 1993, Mrs. Yeager answered and counterclaimed alleging: (1) the antenuptial agreement between Mr. Yeager and her was void; (2) Mr. Yeager's will was invalid because of undue influence; (3) Her claims against the estate are valid and should be paid; and (4) Because of improper estate administration, the co-executors should be removed and another executor(s) substituted. On March 31, 1993, the co-executors answered denying Mrs. Yeager's counterclaim and asserting that Mrs. Yeager's "unwise and inappropriate business practices ... created indebtedness against the estate in excess of three-quarters of a million dollars, for the satisfaction of which sale of substantially all of the estate assets will be necessary."

After numerous depositions and a hearing, the circuit court, on March 11, 1994, entered an order finding: (1) the prenuptial agreement void; (2) Mr. Yeager's will valid; (3)

because the two corporations, privately held by Mr. Yeager, were operated as Mr. Yeager's *alter ego,* the corporations are to be treated as "one and the same" as the estate; (4) a bond, as set by statute, be posted by the executor(s); and (5) the appellants be removed as co-executors and appointing a third party as executor whose bond and fees are to be paid by the estate. The circuit court continued its jurisdiction over matters "arising out of this controversy and relating to the Earl Yeager Estate and all property (real, personal, mixed; tangible and intangible) of said Estate." The circuit court also ordered the new executor to "permit defendant Emily Yeager to continue to work as General Manager of Ford Sales, Inc., at reasonable compensation and continue to reside in the widow's residence the same as she did during the lifetime of Earl Yeager."

On March 17, 1994, Mrs. Yeager gave notice that she "elects to take her statutory dower share of the estate of her deceased husband." After the March 11, 1994 order, the circuit court ordered payment of various fees and expenses of the appointed executor, has approved the sale of stock held by the estate, and has held an additional hearing. On July 15, 1994, the circuit court entered an order clarifying certain powers of the appointed executor and approving some of the actions of the executor. The July 15, 1994 order delayed consideration of the "furniture and other personal property alleged to have been wrongfully removed by the plaintiffs...."

Ms. Sipp and Dr. Yeager appealed the March 11, 1994 circuit court order to this Court maintaining that the circuit court erred: (1) in finding the antenuptial agreement invalid; (2) in removing them as co-executors; and (3) in allowing Mrs. Yeager to continue as a manager of corporate estate assets. Mrs. Yeager objected to the appeal alleging: (1) the March 11, 1994 circuit court order was not final; (2) that the March 11, 1994 order should be affirmed; and (3) all matters in the March 11, 1994 order not raised on appeal be considered waived.

## II

Recently in *James M.B. v. Carolyn M.,* 193 W.Va. 289, 292, 456 S.E.2d 16, 19 (1995),

we discussed the " 'rule of finality,' [which] is designed to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]' *United States v. Hollywood Motor Car Co., Inc.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754, 756 (1982)." In *James M.B.,* the circuit court had not ruled on a motion for reconsideration filed by the appellants, before the appellants filed a notice of motion to appeal. *James M.B.* found that "a motion for reconsideration filed within ten days of judgment being entered suspends the finality of the judgment and makes the judgment unripe for appeal." Syl. pt. 7, in part, *James M.B.*

In *James M.B.,* we noted that *W.Va. Code* 58–5–1 [1925] requires a final decision for an appealable order. In Syl. pt. 3, *James M.B.,* we stated:

Under W.Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution of what has been determined.

*See Stephen L.H. v. Sherry L.H.,* —— W.Va. ——, ——, —— S.E.2d ——, —— [1995 WL 87940] (Slip op. at 1) (No. 22084 March 6, 1995).

In *James M.B.,* we noted that specific classes of interlocutory orders were appealable by statute or the *W.Va.Rules of Civil Procedure* or "fall within a jurisprudential exception. [Footnote omitted.]" *James M.B.,* 193 W.Va. at 292–93, 456 S.E.2d at 19–20. One of these specific classes of appealable interlocutory orders is found in Rule 54(b) [1978] of the *W.Va.R.Civ.P.,* which allows this Court to consider judgments involving multiple parties or claims. *See James M.B.,* 193 W.Va. at 292–93 n. 3, 456 S.E.2d at 19–20 n. 3.

Rule 54(b) provides:

*Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as

to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

We have long held that an order which " 'approximat[es]' a final order in its 'nature and effect' " is appealable under Rule 54(b). *Durm v. Heck's, Inc.*, 184 W.Va. 562, 566, 401 S.E.2d 908, 912 (1991); *Taylor v. Miller*, 162 W.Va. 265, 269, 249 S.E.2d 191, 194 (1978); *Lloyd v. Kyle*, 26 W.Va. 534, 540 (1885). In *Durm, supra*, we noted that our interpretation of Rule 54(b) is not as strict as the federal courts in that we do not require an "express determination that there is not just reason for delay and ... an express direction for the entry of judgment." *Durm*, 184 W.Va. at 566, 401 S.E.2d at 911. Syl. pt. 2, *Durm* states:

Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that 'no just reason for delay' exists and 'directi[ng] ... entry of judgment' will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

The key question for determining if a circuit court's order is appealable under Rule 54(b) is whether that order approximates a final order in its nature and effect.

In this case, the circuit court's March 11, 1994 order is not considered appealable either under *W.Va.Code* 58–5–1 [1925] or Rule 54(b) [1978] of the *W.Va.R.Civ.P.* The March 11, 1994 order of the circuit court is

not a final order under *W.Va.Code* 58–5–1 [1925] because it did not end the litigation between the parties. The record indicates that after the March 11, 1994 order, the circuit court has continued to exercise jurisdiction of matters arising from the estate of Mr. Yeager. In its July 15, 1994 order, the most recent order in the record, the circuit court noted that the classification of various property remains in dispute and that an estate appraisement has not been filed. The parties agree that the March 11, 1994 order does not address Mrs. Yeager's claims against the estate. In their brief, Ms. Sipp and Dr. Yeager urge this Court to remove Mrs. Yeager from managing corporate estate assets. Although the March 11, 1994 order resolves certain issues, the order does not end the litigation between the parties and therefore, is not an appealable order under *W.Va.Code* 58–5–1 [1925].

Neither can the March 11, 1994 order of the circuit court be considered an appealable order under Rule 54(b) [1978] of the *W.Va. R.Civ.P.* First, we note that the circuit court did not consider this order to be final. Rather, the circuit court was ruling on the motions to remove the co-executors and to have Mrs. Yeager relinquish control of Yeager Ford Sales, Inc. In order to rule on those motions, the circuit court had to resolve some of the other issues in this case. The circuit court did not attempt to resolve all the issues and the order states that jurisdiction is retained on the classification of all property. Although the circuit court's perception of an order is not dispositive, it does provide guidance. *See Stephen L.H.,* —— W.Va. at ——, —— S.E.2d at ——, Slip op. at 2, *quoting, Strahin v. Lantz,* 193 W.Va. 285, 286 n. 1, 456 S.E.2d 12, 13 n. 1 (No. 22099 Feb. 17, 1995) ("we adopt a practical interpretation that looks to the intention of the circuit court").

Although maintaining that the court order "approximates a final order in nature and effect," Ms. Sipp and Dr. Yeager note that Mrs. Yeager's claims against the estate have not been addressed and they even request that this Court remove Mrs. Yeager from managing estate/corporate assets and appoint a Special Receiver. The record indi-

cates that several issues remain in litigation such as: (1) Mrs. Yeager's claims against the estate; (2) the classification of various property; (3) the disposition and use of insurance proceeds, both Mr. Yeager's life insurance policies and the insurance proceeds on his lost ring; and (4) Mrs. Yeager's charges of fiduciary mismanagement. Because the matter continues in litigation, other issues may arise and some of the listed issues may be resolved. The evidence in this case shows that the March 11, 1994 order of the circuit court does not approximate a final order in its nature and effect, and therefore, we find that the March 11, 1994 order is not appealable under Rule 54(b) of the *W.Va.R.Civ.P.*

For the above stated reasons, this case is dismissed without prejudice.

Dismissed.