649 S.E.2d 233

Helen P. WALKER, Plaintiff
Below, Appellee,

v.

OPTION ONE MORTGAGE CORPORA-
TION, A Corporation, and H & R Block
Mortgage Corp., A Corporation, Defen-
dants Below, Appellants.

No. 33225.

Supreme Court of Appeals of
West Virginia.

Submitted: April 18, 2007.

Decided: June 7, 2007.

Dissenting Opinion of Justice
Davis June 18, 2007.

Kenneth E. Tawney, Amber L. Hoback, Kevin T. Wills, Jackson & Kelly PLLC, Charleston, for the Appellants.

Bren J. Pomponio, Daniel F. Hedges, Mountain State Justice, Inc., Charleston, for the Appellee.

PER CURIAM.

The appellants herein and defendants below, Option One Mortgage Corporation [hereinafter, "Option One"] and H & R Block Mortgage Corporation [hereinafter, "H & R

Block"],[1] appeal from an order entered July 7, 2005, by the Circuit Court of Kanawha County. By that order, the circuit court denied the appellants' motion to file a counterclaim and a third-party complaint. On appeal to this Court, the appellants argue that the circuit court abused its discretion by denying their motion. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we agree and reverse the decision of the circuit court.

## I.

## FACTS

On April 29, 2002, the plaintiff below and appellee herein, Helen F. Walker [hereinafter, "Ms. Walker"], was approved for a mortgage loan with H & R Block to enable her to purchase a house. At the time of her application, Ms. Walker represented that she had $18,000 to use as a down payment for the purchase. H & R Block contends that the fact that Ms. Walker intended to make a down payment in this amount substantially contributed to its decision to approve her application for a $46,963.38 [2] mortgage loan. Following this transaction, H & R Block assigned Ms. Walker's loan to its affiliated assignee, Option One.

Thereafter, Ms. Walker defaulted on her loan, and the appellants sent her a reinstatement quote requesting payment of $6,530 in order to avoid foreclose on her home. On August 7, 2003, Ms. Walker filed a lawsuit against the appellants in the Circuit Court of Kanawha County alleging predatory lending practices and seeking cancellation of the loan, among other relief. By answer filed December 15, 2003, the appellants denied all of the charges against them and asked the circuit court to dismiss the case with prejudice.

They did not assert any counterclaims in that pleading. Pursuant to the April 27, 2004, original scheduling order, May 15, 2004, was set as the deadline date to file third-party complaints, while counterclaims were not mentioned in that order. In addition, November 1, 2004, was set as the discovery cutoff date, while January 24, 2005, was set as the original trial date.

On October 29, 2004, the appellants took the depositions of Ms. Walker and her daughter, Paula Walker Paul [hereinafter, "Ms. Paul"]. During this testimony, counsel for the appellants began to question the source of Ms. Walker's $18,000 down payment for her home. Upon further investigation and the receipt of subpoenaed bank records on December 8, 2004, counsel began to suspect that such monies had been illicitly obtained by Ms. Paul from her former employer.[3] Counsel for the appellants alerted both Ms. Paul's former employer and counsel for Ms. Walker of their suspicions. On January 26, 2005, counsel for the appellants informed counsel for Ms. Walker that this information may lead them to file a counterclaim and a third-party complaint. Ms. Paul's former employer undertook its own investigation and, on March 21, 2005, turned the matter over to law enforcement authorities.

On April 4, 2005, the appellants filed their "Motion to File Counterclaim and Third–Party Complaint" that is the subject of this appeal.[4] On July 7, 2005, the circuit court denied the appellants' motion concluding "that the deadline for filing third party complaints passed nearly fourteen months ago on May 15, 2004 and [Appellants] have failed to provide good cause why the deadline should be extended." From this ruling, the appel-

1. For ease of reference, Option One and H & R Block will also be referred to collectively as "the appellants."

2. The appellants claimed the actual loan amount financed was $50,100, but the circuit court determined this calculation to be inaccurate.

3. Ms. Walker testified that these funds were part of the monies she received in her divorce settlement.

4. Ms. Walker died on May 11, 2005. By order entered August 1, 2005, Ms. Paul, as executrix of her mother's estate, was substituted as the party plaintiff in this case. However, the style of the case has remained unchanged. Therefore, for ease of reading, we will continue to refer to Ms. Walker as the appellee.

lants now appeal to this Court.[5]

## II.

### STANDARD OF REVIEW

We have been called upon to determine whether the circuit court erred by not permitting the appellants to file a third-party complaint. In Syllabus Point 1 of *Jones v. Sanger,* 217 W.Va. 564, 618 S.E.2d 573 (2005), this Court held that:

" ' "A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend." Syl. Pt. 6, *Perdue v. S.J. Groves and Sons Co.,* 152 W.Va. 222, 161 S.E.2d 250 (1968).' Syl. Pt. 5, *Poling v. Belington Bank, Inc.,* 207 W.Va. 145, 529 S.E.2d 856 (1999)." [Syllabus Point 1,] *Boggs v. Camden–Clark Memorial Hosp. Corp.,* 216 W.Va. 656, 609 S.E.2d 917 (2004).

Moreover, in Syllabus Point 2 of *State ex rel. Leung v. Sanders,* 213 W.Va. 569, 584 S.E.2d 203 (2003), we explained that:

" 'The provisions for impleader under Rule 14(a), West Virginia Rules of Civil Procedure, . . . are within the sound discretion of the trial court . . . .' Syl. Pt. 5, in part, *Bluefield Sash & Door Co., Inc. v. Corte Constr. Co.,* 158 W.Va. 802, 216 S.E.2d 216 (1975), *overruled on other grounds, Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977)." Syl. pt. 5, in part, *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

With these standards in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

On appeal to this Court, the appellants raise a single assignment of error challenging the circuit court's denial of its motion to file a counterclaim and a third-party complaint. Because these two proposed filings constitute two distinct pleadings against two separate parties, we will consider separately the propriety of the circuit court's rulings denying the appellants' motion to file a counterclaim and the appellants' motion to file a third-party complaint.

#### A. Compulsory Counterclaim

The appellants first complain that the circuit court erred by denying their motion to file a compulsory counterclaim against Ms. Walker to allege fraud in her acquisition of the underlying mortgage. In support of their position, the appellants rely upon Rule 13 of the West Virginia Rules of Civil Procedure which provides, in relevant part:

(a) *Compulsory counterclaims.*—A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

. . . .

(f) *Omitted counter claim.*—When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires the pleader, he may by leave of court set up the counterclaim by amendment. . . .

---

**5.** On November 22, 2006, Ms. Walker moved to dismiss the instant appeal based upon the September 26, 2005, and March 6, 2006, rulings by the circuit court. This Court denied that motion by order entered January 24, 2007.

In sum, the appellants argue that the circuit court erred by denying their motion to file their counterclaim against Ms. Walker because the counterclaim was compulsory and thus was required to be brought in this action. Moreover, the purpose of Rule 13 requires that they be permitted to assert their counterclaim in order to avoid fragmented litigation. *See Sorsby v. Turner*, 201 W.Va. 571, 575, 499 S.E.2d 300, 304 (1997) ("The purpose of Rule 13 is to 'prevent the fragmentation of litigation, multiplicity of actions and conserve judicial resources.'" (citation omitted)). Additionally, if the appellants are not permitted to assert this claim, it will be deemed waived because it is compulsory in nature. *See Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897, 920 (1974) ("Failure to assert a compulsory counterclaim is a waiver and abandonment of such a claim and an adverse decision to the putative claimant is *res judicata*.").

█ The appellants further claim that they have not been dilatory in asserting their counterclaim against Ms. Walker insofar as they did not discover their claim against her until long after their original answer was due and had been filed. They further contend that they have satisfied the requirements of Rule 15(a) of the West Virginia Rules of Civil Procedure which direct that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In further support of their position, the appellants rely upon the recent decision of this Court in *State ex rel. Vedder v. Zakaib*, 217 W.Va. 528, 618 S.E.2d 537 (2005), in which we held, in Syllabus Points 2 and 3, respectively, that:

> The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W.Va. R. Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden as-

sertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.

> The liberality allowed in the amendment of pleadings pursuant to Rule 15(a) of the West Virginia Rules of Civil Procedure does not entitle a party to be dilatory in asserting claims or to neglect his or her case for a long period of time. Lack of diligence is justification for a denial of leave to amend where the delay is unreasonable, and places the burden on the moving party to demonstrate some valid reason for his or her neglect and delay.

By contrast, Ms. Walker contends that the circuit court did not abuse its discretion by denying the appellants' motion to file a counterclaim when they had waited approximately six months from first learning of the basis for which they filed their motion; nearly fourteen months had passed from the original date to amend pleadings until the time of the hearing on this motion; and only six weeks remained before the scheduled trial date. Finally, Ms. Walker states that she does not know what relief the appellants now seek insofar as her underlying judgment against the appellants has resulted in a judgment in her favor, which judgment also has been satisfied.

█ After thoroughly reviewing the record and considering all of the parties' arguments, we find that the circuit court abused its discretion in not allowing the appellants to file a compulsory counterclaim. Permitting the appellants to assert their counterclaim would have resulted in presentation of a more complete picture of the underlying facts in this action. Moreover, it is clear to us that Ms. Walker had ample time to respond to the counterclaim by the fact that when the appellants moved the circuit court to file the counterclaim in April 2005, the trial was still approximately five months away, in September 2005. Furthermore, we find no evidence that the appellants were dilatory in presenting their counterclaim. The appellants told Ms. Walker's counsel of their possible intent to pursue a counterclaim in December 2004 and January 2005 if their investigation uncovered wrongdoing on the part of Ms. Walker or Ms. Paul. They did not

know for certain that the down payment funds had been illegally obtained until March 2005, when Ms. Paul's former employer completed its investigation and informed the appellants' counsel that the matter was going to be turned over to the police. Upon learning this information, the appellants filed their motion to assert their counterclaim fourteen days later.

We believe that fourteen days was certainly a reasonable amount of time for the appellants to file their motion to assert a counterclaim. Filing a counterclaim before they knew whether or not a crime had occurred by Ms. Walker or Ms. Paul would have been irresponsible. For instance, had Ms. Paul's employer discovered that no embezzlement had occurred, and had the appellants recklessly filed a claim making such serious allegations against her and Ms. Walker, the parties may have suffered unnecessary and irreconcilable damage to their credibility. With that in mind, we believe that the appellants acted responsibly in waiting for the results of Ms. Paul's employer's investigation. Furthermore, we would be remiss if we did not point out that but for the misrepresentations with regard to where the $18,000 originated, the appellants would have discovered the misconduct giving rise to their counterclaim much sooner. Accordingly, the appellants should have been permitted to file their counterclaim against Ms. Walker.

### B. Third–Party Complaint

■ The appellants also allege that the circuit court erred by denying their motion to file a third-party complaint against Ms. Paul, individually, for her role in helping Ms. Walker to illicitly acquire the underlying mortgage, including improperly obtaining monies from Ms. Paul's former employer for the $18,000 down payment. In support of their position, the appellants rely upon Rule 14(a) of the West Virginia Rules of Civil Procedure which states:

(a) *When defendant may bring in third party.*—At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action. The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make any defenses to the third-party defendant plaintiff's claim as provided in Rule 12 and any counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert any defenses as provided in Rule 12 and any counterclaims and cross-claims as provided in Rule 13. Any party may move to strike the third-party claim, or for its severance or separate trial. A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to the third-party for all or part of the claim made in the action against the third-party defendant.

As to the circuit court's denial of their motion to file a third-party complaint, the appellants contend that they demonstrated "good cause" as required for the modification of a court's scheduling orders entered pursuant to W.Va. R. Civ. P. 16(b). *See State ex rel. Pritt v. Vickers*, 214 W.Va. 221, 227, 588 S.E.2d 210, 216 (2003) ("Trial courts should not permit parties to obtain extensions absent a showing of good cause."). The appel-

lants claim that they have satisfied the required showing of good cause because their delay in moving to file the pleading was not due to their negligence or wrongdoing, but rather was attributable to the time at which they discovered Ms. Paul's wrongdoing due, in part, to her misrepresentations as to the source of the down payment funds.

After learning, in December 2004, that the down payment monies had most likely been illicitly obtained by Ms. Paul, the appellants claim that they diligently investigated the matter before filing their motion due to the seriousness of their allegations against Ms. Paul and the potential criminal nature of the alleged misconduct. Upon their receipt of the bank records in December 2004, the appellants assert that they met with Ms. Paul's former employer, who then began its own investigation, and asked counsel for Ms. Walker to reopen Ms. Paul's deposition, which request was denied. In January 2005, counsel for the appellants learned that Ms. Paul's former employer was continuing its investigation and alerted counsel for Ms. Walker that they might file a counterclaim and a third-party complaint. After learning, on March 21, 2005, that Ms. Paul's former employer had turned its investigation over to the police, counsel for the appellants filed, fourteen days later on April 4, 2005, their motion to file a third-party complaint against Ms. Paul.

Ms. Walker responds that the circuit court properly denied the appellants' motion to file a third-party complaint against Ms. Paul because they had waited approximately six months from first learning of the basis therefor to file their motion; nearly fourteen months had passed from the original date to amend pleadings until the time of the hearing on this motion; and only six weeks remained before the scheduled trial date. Finally, Ms. Walker states that she does not know what relief the appellants now seek insofar as her underlying judgment against the appellants has resulted in a judgment in her favor, which judgment also has been satisfied, and counsel for Ms. Walker represents Ms. Paul only in her representative capacity, not individually.

In consideration of the foregoing, we do not believe that permitting the appellants to file a third-party complaint against Ms. Paul would have prejudiced either Ms. Walker or Ms. Paul insofar as the only additional issues to be determined were whether Ms. Paul embezzled money from her former employer and whether Ms. Walker and Ms. Paul then used that money to obtain the mortgage in question. Moreover, as discussed earlier, any resultant prejudice is of Ms. Walker's and Ms. Paul's own making insofar as they did not truthfully reveal the source of the down payment monies when they were questioned during their depositions. Finally, we believe that permitting the third-party complaint in this case would further the purpose of Rule 14 "to eliminate circuitry of actions when the rights of all three parties center upon a common factual situation." Syllabus Point 3, in part, *Magnet Bank v. Barnette,* 187 W.Va. 435, 419 S.E.2d 696 (1992). *See also Howell v. Luckey,* 205 W.Va. 445, 449, 518 S.E.2d 873, 877 (1999) ("[O]ne of the primary goals of any system of justice [is] to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts."). Consequently, we find the appellants' arguments persuasive and therefore believe that the circuit court abused its discretion in denying the appellants' motion to file a third-party complaint against Ms. Paul.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on July 7, 2005, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

DAVIS, C.J., dissenting.

The majority has remanded the case to permit the defendants to amend their answer to the complaint, to add a counterclaim, and to implead a third party. I dissent from this disposition of the case for the following reasons: (1) the order appealed was a nonappealable interlocutory order, (2) judgment

has been rendered and satisfied in favor of the plaintiff, (3) the counterclaim issue was reviewed under an incorrect legal standard, and (4) the impleader issue was incorrectly analyzed by the lower court.

### A. The Order Appealed Was a Nonappealable Interlocutory Order

The initial problem I have with the majority opinion is that the appeal should have been dismissed as improvidently granted. The order denying the defendants' motion to add a counterclaim and implead a third party was a nonappealable interlocutory order. *See McDaniel v. Kleiss*, 198 W.Va. 282, 284, 480 S.E.2d 170, 172 (1996) ("Since the circuit court's order ... is interlocutory and not subject to appeal, we find the petition for appeal was improvidently granted and accordingly dismiss the same for lack of appellate jurisdiction."); *Sipp v. Yeager*, 194 W.Va. 66, 67, 459 S.E.2d 343, 344 (1995) ("[W]e find that the circuit court's decision is an interlocutory rather than a final order and therefore, we dismiss this appeal as improper before this Court."). Our law is clear. "Under W. Va.Code, 58–5–1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." Syl. pt. 3, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995). "The required finality is a statutory mandate, not a rule of discretion." *Province v. Province*, 196 W.Va. 473, 478, 473 S.E.2d 894, 899 (1996). In other words, this Court generally has no discretion to permit an appeal of an interlocutory order that does not terminate a claim or the litigation between parties.[1] As Justice Neely wrote, "we are adamantly opposed to being in the interlocutory appeals business." *Hinkle v. Black*, 164

W.Va. 112, 116, 262 S.E.2d 744, 747 (1979). "To be appealable, therefore, an order either must be a final order or an interlocutory order approximating a final order in its nature and effect." *Guido v. Guido*, 202 W.Va. 198, 202, 503 S.E.2d 511, 515 (1998).

With respect to an order denying a motion to assert a counterclaim, courts have held that "[a]n order denying a defendant leave to amend an answer to add a counterclaim is an interlocutory order." *Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02–C–1941, 2004 WL 2966948, at *3 (N.D.Ill. Nov.24, 2004). Further, "an order denying a motion to amend an answer to assert a [counterclaim] is not appealable as a final judgment. A party must wait until a final judgment in the case to appeal the order." *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 248 (7th Cir.1992). *See Bridges v. Department of Maryland State Police*, 441 F.3d 197, 206 (4th Cir.2006) (ruling on motion to amend pleading interlocutory and nonappealable); *Levy v. Securities & Exch. Comm'n*, 405 F.2d 484, 486 (5th Cir.1968) (same); *Walker v. City of Pine Bluff*, 414 F.3d 989, 993 (8th Cir.2005) (same); *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080, 1081 (Fed.Cir.1993) (same).

With regard to an order denying a motion to implead a third party, it has been held that "denial of a motion to implead a third party defendant is not appealable." *Dollar A Day Rent A Car Systems, Inc. v. Superior Court In & For Maricopa County*, 107 Ariz. 87, 482 P.2d 454, 456 (1971). *See Thompson v. American Airlines, Inc.*, 422 F.2d 350, 351 (5th Cir.1970) (order denying impleader not appealable). Moreover, "the federal courts have held that where a defendant's motion to implead a third party is denied the order would not be appealable inasmuch as it does

---

1. One exception to this general rule involves injunction proceedings. *See* Syl. pt. 2, *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W.Va. 438, 445, 582 S.E.2d 885, 892 (2003) ("West Virginia Constitution, article VIII, section 3, which grants this Court appellate jurisdiction of civil cases in equity, includes a grant of jurisdiction to hear appeals from interlocutory orders by circuit courts relating to preliminary and temporary injunctive relief."). Another exception

comes under the collateral order doctrine. *See Durm v. Heck's, Inc.*, 184 W.Va. 562, 566 n. 2, 401 S.E.2d 908, 912 n. 2 (1991) ("An interlocutory order would be subject to appeal under this doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment.").

not finally dispose of any rights of the defendant." *Davis v. Roper*, 119 Ga.App. 442, 167 S.E.2d 685, 686 (1969). In other words, "when a trial court denies the motion of a party to the action to implead other persons, that order is not appealable for the reason that a party to an action can have that and other intervening orders reviewed on an appeal from the final judgment." *Fahrenkrug v. D.M. Builders, Inc.*, 41 Wis.2d 416, 164 N.W.2d 281, 282 (1969). *See Moynahan v. Fritz*, 90 Ariz. 144, 367 P.2d 199, 201 (1961) ("If on final determination of the cause in the superior court a judgment is rendered against the plaintiff and in favor of the defendants, defendants having prevailed the impleader would have been purposeless. If judgment is rendered against defendants, they can still appeal to this Court to determine the question whether third parties should have been added. Public policy is against the piecemeal adjudication of litigation by appeals to this Court with the resultant delay in determination of a plaintiff's rights.").

In order for this Court to have jurisdiction, the case had to be filed as a writ of prohibition. *See State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 591 S.E.2d 728 (2003) (writ of prohibition sought to prevent enforcement of order allowing pleading to be amended); *State ex rel. Leung v. Sanders*, 213 W.Va. 569, 584 S.E.2d 203 (2003) (writ of prohibition filed to prevent enforcement of order denying leave to implead third party). No writ of prohibition was filed. Consequently, the majority has established improper precedent by issuing an *ultra vires* opinion. To the extent that the majority felt compelled to address the merits of the issues presented, they should have done so, as urged in the plaintiff's brief, by treating the appeal as a request for a writ of prohibition and reviewed the case under the standard for

that writ.[2] *See State ex rel. Register–Herald v. Canterbury*, 192 W.Va. 18, 19 n. 1, 449 S.E.2d 272, 273 n. 1 (1994) ("In this case, it is logical to treat the appeal filed by Mr. Thomas as a prohibition since it challenges the scope of the injunction entered by the circuit court."); *State ex rel. Lloyd v. Zakaib*, 216 W.Va. 704, 705 n. 1, 613 S.E.2d 71, 72 n. 1 (2005) ("[W]e will treat the writ of prohibition as an appeal rather than a matter requiring exercise of this Court's extraordinary jurisdiction."); *State ex rel. Riley v. Rudloff*, 212 W.Va. 767, 770 n. 1, 575 S.E.2d 377, 380 n. 1 (2002) ("Although this case was brought as a petition for writ of mandamus, we have concluded that this matter should be treated as a writ of prohibition.").

### B. Judgment Was Rendered and Satisfied in Favor of the Plaintiff

The defendants filed their interlocutory appeal with this Court on September 26, 2005. On that same date, the circuit court entered judgment in favor of the plaintiff. The defendants did not appeal the judgment. A satisfaction of the judgment was entered on July 25, 2006.[3] Even though the action brought by the plaintiff was dismissed from the circuit court's docket, the majority opinion permits the defendants to add a counterclaim and implead a third party to an action that no longer legally exists in the circuit court.[4] The majority decision is inconsistent with, and implicitly overrules, prior precedent by this Court.

The issue of whether or not a party may amend a pleading, to add additional parties after a final judgment has been rendered, was squarely addressed by this Court in *Ash v. Ravens Metal Products, Inc.*, 190 W.Va. 90, 437 S.E.2d 254 (1993). The decision in *Ash* involved a complaint by 149 plaintiffs seeking vacation from their employer after

---

**2.** As I discuss in the next section of my dissent, a final judgment was entered in this case while this appeal was pending. This fact did not change the status of the improper interlocutory appeal because the defendants failed to appeal that final judgment.

**3.** On March 6, 2006, the circuit court entered an order awarding the plaintiff attorney's fees and costs.

**4.** I will note that the majority opinion failed to discuss the fact that the plaintiff obtained a judgment in this case, which was satisfied, and that the matter was dismissed from the circuit court's docket. The majority opinion had to omit such discussion in order to reach the merits of the case.

they were terminated. The trial court granted judgment in favor of the plaintiffs. Subsequent to entry of the judgment, the plaintiffs filed a motion to add additional plaintiffs. The trial court denied the post-trial motion. The plaintiffs filed an appeal on numerous grounds, one of which involved the denial of their motion to add additional plaintiffs.[5] Although this Court reversed the case on several issues and remanded for further litigation, the opinion affirmed the trial court's denial of the plaintiffs' motion to add additional plaintiffs. In so doing, this Court stated "[w]e are not cited nor have we found cases that apply Rule 15 of the West Virginia Rules of Civil Procedure or its federal counterpart to amend a complaint to add additional parties *after a final judgment.*" *Ash,* 190 W.Va. at 95, 437 S.E.2d at 259 (emphasis in original).

Unfortunately, this Court has, in the case *sub judice,* permitted the defendants to implead a third party and file a counterclaim to an action in which a final judgment has been rendered and satisfied. This disposition is inconsistent with *Ash.* The decision in *Ash* actually reversed the judgment in part and remanded the case for further litigation on the merits of the complaint. Even so, this Court refused to allow an amendment to add additional parties because a final judgment had been rendered. In the instant case, the final judgment rendered by the circuit court has not been reversed-it was never appealed. Clearly, this case presented a stronger basis for denying the relief sought than the facts presented in *Ash.*

The issue of permitting a post-judgment pleading amendment is discussed in the commentary to our Rules of Civil Procedure as follows:

When a trial court enters a final judgment dismissing an action, and no appeal is taken, a [party] must request leave to amend only by seeking to alter or reopen the judgment under Rule 59 or Rule 60. This is because once a judgment is entered . . . an amendment cannot be allowed until the judgment is set aside or vacated.

Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure, § 15(a), at p. 458 (2d ed.2006). In the instant case, the final judgment has not been set aside or vacated by the trial court; nor has the final judgment been reversed by this Court. Absent setting aside or reversing the final judgment in this case, it is simply not legally possible to allow the defendants to add a counterclaim and bring in a third party to a nonexistent case.

### C. The Counterclaim Issue Was Reviewed under the Wrong Legal Standard

Here, the defendants argued that they sought to add their counterclaim [6] pursuant to the "when justice requires" provision in Rule 13(f) of the West Virginia Rules of Civil Procedure.[7] Further, the defendants argued that insofar as Rule 15(a) states that leave to amend "shall be freely given," the trial court should have allowed their answer to be amended to add the counterclaim. The majority opinion agreed with the defendants and analyzed the issue as outlined by the defendants. This is error.

When determining whether to permit a defendant to assert an omitted counterclaim under Rule 13(f), the initial inquiry concerns whether the amendment was sought before or after the Rule 16(b) scheduling order deadline for amendments. If the amendment was sought *after* the scheduling order's deadline passed, then the analysis involves Rule

---

5. The defendant filed a cross-appeal.

6. Pursuant to Rule 13(a), a compulsory counterclaim is required to be set out in a defendant's answer to a complaint. *See Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 515, 207 S.E.2d 897, 920 (1974) ( "Failure to assert a compulsory counterclaim is a waiver and abandonment of such a claim and an adverse decision to the putative claimant is res judicata.").

7. Rule 13(f) reads in full as follows:

When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or *when justice requires,* the pleader may by leave of court set up the counterclaim by amendment. (Emphasis added).

13(f)[8] and Rule 16(b).[9] However, if the amendment was sought *before* the scheduling order's deadline passed, then the analysis is under Rule 13(f).[10] This issue has been summarized as follows:

> When a defendant files a motion to amend his/her answer, to add a counterclaim after the scheduling order's time period for amendments has passed, the court must apply both the Rule 16(b) analysis and the Rule 13(f) analysis before allowing the amendment. Insofar as Rule 16(b) should require the "show good cause" standard, this is tougher on the movant than Rule 13(f)'s "no undue prejudice to the opposing party" standard. The effect of reading the two rules together is that the liberal policy of Rule 13(f) only governs motions to amend made *before* the deadline for amendments set by the trial court's scheduling order. Afterwards the defendant must meet the more rigorous Rule 16(b) standard before even reaching the Rule 13(f) prejudice issue.

**8.** Factors that courts have looked at in determining whether to permit an amendment under Rule 13(f) include "whether the counterclaim is compulsory, whether the pleader has acted in good faith and has not unduly delayed filing the counterclaim, whether undue prejudice would result to the plaintiff, or whether the counterclaim raises meritorious claims." *Northwestern Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts,* 717 F.Supp. 148, 153 (S.D.N.Y.1989).

**9.** "Generally, Rule 15 governs the amendment of pleadings, including answers.... Where, however, the Court has issued a scheduling order establishing a deadline for amendments to the pleadings, and a party seeks leave to file an amended pleading after such deadline has passed, the 'more stringent' standards of Rule 16(b), not those of Rule 15(a), apply." *Synopsys, Inc. v. Magma Design Automation, Inc.,* No. C–04–3923–MMC, 2007 WL 420181, at *2 (N.D.Cal. Feb.6, 2007).

**10.** In the instant proceeding, the majority opinion has implicitly adopted the position that Rule 13(f) and Rule 15(a) should be read together. Therefore, under the majority opinion, if a counterclaim is sought to be added before a scheduling order's deadline passed, then the analysis would be under both Rule 13(f) and Rule 15(a). There is a split of authority in federal courts as to whether Rule 15(a) applies to an amendment under Rule 13(f) under any circumstances. *See Stoner v. Terranella,* 372 F.2d 89, 91 (6th Cir. 1967) ("With respect to the scope of [Rule 13(f) ], it is clear that it provides a remedy for setting up omitted counterclaims which is separate and

Cleckley, Davis, & Palmer, Litigation Handbook, § 13(f), at p. 432 (emphasis in original). *See DeWitt v. Hutchins,* 309 F.Supp.2d 743, 748 (M.D.N.C.2004) ("[A] defendant seeking to amend his answer to add a compulsory counterclaim under Rule 13(f) after the time for amendments in the scheduling order has passed must satisfy both the Rule 16(b) analysis and the Rule 13(f) analysis."); *Escobar v. City of Houston,* Civ.A. No. 04–1945, 2007 WL 471003, at* 1 (S.D.Tex. Feb. 11, 2007) ("All circuit courts to consider the issue have held that the Rule 16(b) 'good cause' standard, rather than the 'freely given' standard of Rule 15(a), governs a motion to amend the pleadings filed after the deadlines set in the scheduling order.").

In the instant case the defendants have conceded that the scheduling order's deadline for amendments had passed before the motion was filed. Consequently, the majority opinion was required to look at Rule 16(b) as the first step in its analysis.[11] If, and only if,

apart from the remedy provided in Rule 15(a) dealing with pleading amendments in general.... Thus, the courts which have passed upon motions for leave to file amended pleadings embracing previously omitted counterclaims have generally considered only Rule 13(f), and not Rule 15."). *But see Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.,* 758 F.Supp. 1080, 1083 (W.D.Pa.1991) ("The better approach is to construe both rules together so that Rule 13(f) supplements the general provisions of Rule 15 by setting forth a particular standard for allowing the late assertion of omitted counterclaims. Once the standard set forth in Rule 13(f) is satisfied and leave of court to set up the omitted counterclaim by amendment has been granted, the remaining provisions of Rule 15 should be fully applicable and the amendment should relate back if it meets the test provided by Rule 15(c)."); *Bank of New York v. Sasson,* 786 F.Supp. 349, 352 (S.D.N.Y.1992) ("Courts must read [Rule] 13(f) together with [Rule] 15(a), which provides that leave to amend a pleading 'shall be freely given when justice so requires.' ").

**11.** The standard under Rule 16(b) for assessing a motion to amend after the scheduling order deadline has passed has been summarized as follows:

> The first step in the analysis of whether or not to permit a party to amend a pleading after a Rule 16(b)(1) deadline has passed, is for the moving party to establish good cause for failing to comply with the deadline. The good

the majority opinion found that the defendants established good cause under Rule 16(b) would it then be necessary to examine the issue under Rule 13(f). Insofar as the majority opinion analyzed the counterclaim only under Rule 13(f) and Rule 15(a), the opinion is wrong. *See Berwind Prop. Group Inc. v. Environmental Mgmt. Group, Inc.,* 233 F.R.D. 62, 66 (D.Mass.2005) ("[I]t is the more stringent 'good cause' standard of [Rule] 16(b), not the 'freely given' standard of Rule 15(a), that governs motions to amend after a scheduling order is in place."); *Melvin v. UA Local 13 Pension Plan,* 236 F.R.D. 139, 145 (W.D.N.Y.2006) ("It is settled law that when a responsive pleading has been filed and a party seeks an amendment after the pretrial scheduling order, Rule 16 is controlling and the movant must satisfy the more stringent standard of good cause.").

The circuit court's order specifically found that the deadline for amending the pleadings "passed nearly fourteen months ago ... and Defendants have failed to provide good cause why the deadline should be extended." The majority opinion relied exclusively upon the "leave shall be freely given" provision in Rule 15(a) in order to disregard the circuit court's finding and erroneously conclude that the defendants reasonably filed their motion fourteen days after learning that they had a counterclaim. Even if I accepted the manner in which the majority opinion interpreted the facts to reach its erroneous fourteen days conclusion, this fact alone does not address the issue of good cause under Rule 16(b). "Where a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the stringent 'good cause' standard under [Rule] 16, not the more liberal standard under Rule 15(a)." *Fremont Inv. & Loan v. Beckley Singleton, Chtd.,* No. 2:03–CV–1406–PMP–RJJ, 2007 WL 1213677, at *5 (D.Nev. Apr.24, 2007). *See Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaning-

less and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). The defendants failed to satisfactorily explain to the circuit court and to this Court the reason why they could not have learned of the counterclaim prior to the expiration of the deadline for amending the pleadings. Consequently, the circuit court correctly denied the defendants' motion to add a counterclaim.

### D. The Impleader Issue Was Incorrectly Analyzed

The majority opinion concluded that the trial court abused its discretion in denying the defendants' motion to implead Paula Paul as a third-party defendant. In doing so, the majority opinion cited to Rule 14(a) and Rule 16(b). *See McSherry v. Capital One FSB,* 236 F.R.D. 516, 519 (W.D.Wash.2006) ("Motions to file third-party complaints made after [the scheduling] deadline must meet not only the standards relevant to the Rule 14(a) substance of the motion, but also meet Rule 16(b)'s requirement of a showing of good cause why the late-filed motion should be permitted."). The flaw in the majority's analysis concerned the substance of the impleader motion. That is, the majority opinion focused exclusively upon the issue of good cause for the untimeliness of the motion, without giving any consideration to the substantive requirements of impleader under Rule 14(a).

Rule 14(a) allows a defendant to implead "a person not a party to the action who is or may be liable to the [defendant] for all or part of the plaintiff's claim against the [defendant]." What is important about this passage from the rule is that a defendant may only implead a third party if that third party will be derivatively liable to the defendant for all or part of the plaintiff's original claim. "Derivative liability is central to the operation of Rule 14. It cannot be used as a device to bring into a controversy matters which merely happen to have some relationship to the original action." *Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey,*

cause standard primarily considers the diligence of the party seeking the amendment. Mere absence of prejudice to the nonmoving party does not satisfy the good cause standard.

If the moving party was not diligent, the inquiry should end.

Cleckley, Davis, & Palmer, Litigation Handbook, § 16(b)(1), at p. 488.

*Elstner Assocs., Inc.,* 117 F.R.D. 576, 578 (E.D.Va.1987). That is, a "third-party defendant's liability cannot simply be an independent or related claim but must be based upon plaintiff's claim against defendant." *Baltimore & Ohio R. Co. v. Central Ry. Servs., Inc.,* 636 F.Supp. 782, 786 (E.D.Pa.1986) (internal quotation marks and citation omitted). Moreover, "[i]f there is no right to relief under the substantive law, impleader under Rule 14 is improper." *In re Department of Energy Stripper Well Exemption Litig.,* 752 F.Supp. 1534, 1536 (D.Kan.1990). In the instant proceeding, the defendants failed to satisfy the standards for impleading under Rule 14(a).

The defendants' claim against Ms. Paul is centered around allegations that she embezzled money from her employer and that the money was given to the plaintiff to secure a down payment on the plaintiff's home. Assuming, for the sake of argument, that Ms. Paul did, in fact, embezzle money from her employer and then gave it to the plaintiff to make the down payment, how does this assumption make Ms. Paul liable for part or all of the judgment rendered against the defendants for the predatory lending claim asserted by the plaintiff? It is generally recognized that the mere fact "[t]hat the wrongful conduct of a third party results in a defendant's liability to the plaintiff under a contract between them is not sufficient to implead the third party under Rule 14(a)." *Ruthardt v. Sandmeyer Steel Co.,* Civ.A. No. 94–6105, 1995 WL 434366, at *2 (E.D.Pa. July 21, 1995). *See F.D.I.C. v. Bathgate,* 27 F.3d 850, 873 (3rd Cir.1994) (that alleged fraud, breach of duty of good faith and other wrongful conduct by third parties resulted in acceleration by plaintiff of defendant's obligations under notes would not support Rule 14(a) impleader); *Blais Constr. Co., Inc. v. Hanover Square Assocs.-I,* 733 F.Supp. 149, 157 (N.D.N.Y.1990) (that breach by third party of contract with defendant allegedly caused its liability to plaintiff under its contract with defendant is insufficient for Rule 14); *Marshall v. Pointon,* 88 F.R.D. 566, 567

(W.D.Okla.1980) (defendant may not implead third parties whose conduct allegedly caused FLSA violations for which plaintiff seeks to hold defendant liable); *A.J. Kellos Constr. Co., Inc. v. Balboa Ins. Co.,* 86 F.R.D. 544, 545 (S.D.Ga.1980) (defendant may not implead supplier whose breach of duty to contractor resulted in defendant's liability to plaintiff on bond securing performance of work by contractor).

The record is clear. No contract, agreement or other relationship existed between the defendants and Ms. Paul.[12] Consequently, Ms. Paul owed no legally recognized duty to the defendants to refrain from giving the plaintiff embezzled money to use as a down payment on the home. Without a duty owed to the defendants by Ms. Paul, the defendants would not be entitled to indemnity or contribution from her. Contribution or indemnity are prerequisites for impleader under Rule 14(a).[13]

Further, assuming for the sake of argument that the defendants may have a valid counterclaim against the plaintiff, for using embezzled money to make a down payment on the home, "[c]ourts are united in holding that impleading is improper ... where it is based merely upon a counterclaim by the [defendant] against the plaintiff in the underlying action" Cleckley, Davis, & Palmer, Litigation Handbook, § 14(a), at p. 443. *See Baltimore & Ohio R. Co. v. Central Ry. Servs., Inc.,* 636 F.Supp. 782, 786 (E.D.Pa. 1986) ("The claims asserted by the defendants/third-party plaintiffs against the third-party defendants are not based upon the plaintiffs' claims against the defendant. Instead, they are based upon the defendants' counterclaims against the plaintiffs. Although the third-party claims and counterclaims are factually related to the original claim, that relationship is insufficient under Rule 14."). The facts of this case clearly establish that the defendants' impleader claim is not based upon the plaintiff's predatory lending claim. It is based solely upon the defendants' counterclaim. This is an impermissible basis for impleader because "im-

---

**12.** The defendants' contractual relationship existed only with the plaintiff.

**13.** To the extent that a cause of action existed against Ms. Paul, it rested exclusively with her employer.

pleader under Rule 14(a) may not be used as a way of combining all controversies having a common relationship in one action." *Continental Ins. Co. v. McKain*, Civ.A.No. 91–2004, 1992 WL 7030, at \*2 (E.D.Pa. Jan.10, 1992) (internal quotation marks and citation omitted). In summary, the majority opinion did not properly analyze impleader under Rule 14(a) and therefore reached a result that is inconsistent with the rule.

Based upon the foregoing, I respectfully dissent. I am authorized to state that Justice Starcher joins me in this dissenting opinion.