613 S.E.2d 71

State of West Virginia ex rel. Kathleen M.
LLOYD, Administrator of the Estate of
Mary V. Hundley, Deceased, Petitioner,

v.

Honorable Paul ZAKAIB, Jr., Judge of the
Circuit Court of Kanawha County;
Charleston Area Medical Center, Inc., A
West Virginia Corporation; Shawnee
Hills, Inc., A West Virginia Corporation;
Leon Shiu–Lung Kwei, M.D., and Emer-
gency Management Specialists, Inc., A
West Virginia Corporation; Respon-
dents

No. 32043.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 18, 2005.

Decided Feb. 10, 2005.

Marvin W. Masters, Robert P. Welsh,
Masters & Taylor, Charleston, West Virginia,
Attorneys for the Petitioner.

Cheryl A. Eifert, Charleston, West Virginia, Attorney for the Respondent, Charleston Area Medical Center, Inc.

Thomas S. Sweeney, Renatha S. Garner, Jeffrey C. Black, MacCorkle, Lavender, Casey & Sweeney, PLLC, Charleston, West Virginia, Attorneys for the Respondent, Shawnee Hills, Inc.

John F. McCuskey, Roberta F. Green, Shuman McCuskey & Slicer, PLLC, Charleston, West Virginia, Attorneys for the Respondents, Leon Suiu–Lung Kwei, M.D. and Emergency Management Specialists, Inc.

PER CURIAM:

Appellant [1] Kathleen M. Lloyd, the administrator of the estate of Mary V. Hundley, appeals from the September 8, 2004, order of the Circuit Court of Kanawha County through which her cause of action against Appellees Shawnee Hills, Inc.; Leon Shiu–Lung Kwei, M.D.; and Emergency Management Specialists, Inc., ("EMS") was dismissed with prejudice for failure to prosecute.[2] As grounds for seeking reinstatement of the dismissed cause of action, Appellant asserts both the career-ending illness of her former counsel and the temporary illness of the trial judge.[3] After fully reviewing the chronological history of these proceedings in conjunction with the unique pattern of facts which impacted on this matter, we conclude that the trial court wrongly failed to find good cause for the delay in prosecution that admittedly occurred in this case. Based on our determination that the lower court committed error, we reverse to permit reinstatement of Appellant's cause of action.

## I. Factual and Procedural Background

On December 17, 1996, Appellant instituted a cause of action against Appellees through which she asserted both medical malpractice and wrongful death.[4] After engaging in discovery, the parties appeared for trial on August 16, 1999. Before the trial could begin, however, the trial court proceeded to consider Appellees' pending summary judgment motions. During the discussion regarding these motions, the parties and the trial judge agreed that a recent decision issued by this Court [5] necessitated the filing of a petition with the Supreme Court of Appeals to seek clarification concerning the applicable standard of care. By order dated April 20, 2001, Judge Zakaib certified four questions to this Court through which the trial court sought specific rulings regarding the governing standard of care in light of *Moats v. Preston County Commission*, 206 W.Va. 8, 521 S.E.2d 180 (1999). On April 9, 2002, this Court refused to accept the petition seeking advance clarification of the standard of care owed by Appellees to decedent.

On May 1, 2002, Appellee Shawnee Hills, Inc. filed for chapter seven relief in bankruptcy court. On September 27, 2002, Appellant filed a motion in bankruptcy court seeking relief from the automatic stay on civil proceedings imposed under federal law. By letter dated October 21, 2002, Appellant's counsel, Robert Taylor, informed Appellees' counsel that he had secured a lifting of the

---

1. While Ms. Lloyd brought this action as a writ of prohibition to stop enforcement of the lower court's dismissal order, under our decision in *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996), we made clear that dismissals under Rule 41(b) of the West Virginia Rules of Practice and Procedure are to be reviewed by this Court pursuant to properly taken appeals. Accordingly, we will treat the writ of prohibition as an appeal rather than a matter requiring exercise of this Court's extraordinary jurisdiction.

2. *See* W.Va.R.Civ.P. 41(b).

3. *See infra* note 12.

4. The factual predicate for the lawsuit involved the presentment of the deceased at CAMC–General's Emergency Room on June 7, 1995. Purportedly, Ms. Hundley indicated that she felt depressed, but was released after medical personnel determined that she was not suicidal. Within approximately twenty-two hours of her release from the emergency room, Ms. Hundley's body was found in the Kanawha River, an apparent suicide.

5. The case which prompted the parties' decision to seek resolution through certified questions was *Moats v. Preston County Commission*, 206 W.Va. 8, 521 S.E.2d 180 (1999), a decision that was issued on July 15, 1999. In *Moats*, this Court adopted a specific standard of care applicable to wrongful death by suicide that requires the demonstration of a specific relationship between the deceased and the caretakers which gives rise to a duty to prevent the decedent from committing suicide.

stay from the bankruptcy court. Through this same letter, he suggested that the parties should approach the trial court to obtain a trial date. Mr. Taylor also inquired of Appellees' counsel regarding the viability of mediation as a means of resolving this legal matter.

Shortly before Mr. Taylor obtained the stay from the bankruptcy court, Appellee EMS renewed its previously filed motion for summary judgment, but did not schedule a hearing on this matter. In response to Mr. Taylor's October 21, 2002, letter suggesting alternate methods for moving this case forward, counsel for EMS and Dr. Kwei communicated with Mr. Taylor by telephone on November 4, 2002. This telephone communication was the last event that transpired before the filing on November 5, 2003,[6] of the Rule 41(b) motion by Appellee EMS.

Appellant responded to the dismissal motion on November 13, 2003, attaching to her response an affidavit signed by Mr. Taylor. In that affidavit, Mr. Taylor disclosed a serious heart ailment which necessitated his indefinite absence from the Masters and Taylor law firm beginning on December 31, 2002. Through that same affidavit, Mr. Taylor averred that when he ceased practicing law in December 2002, he did so with the intention of remaining off work for the "foreseeable future."

On January 15, 2004, Judge Zakaib heard argument on the motion to dismiss. During the course of this hearing, the trial judge stated that nothing of any real substance had been done on this case since August 1999 and further noted that current counsel for Appellant, Mr. Robert Welch, essentially acknowledged that the case had been languishing for

some time. Judge Zakaib indicated that he would hold any ruling on the motion to dismiss in abeyance and urged the parties to mediate the case within three weeks time.[7]

At a hearing on July 13, 2004, the parties informed the trial judge that the case had not been successfully resolved through mediation. During the course of this hearing, the trial court decided to dismiss the case for lack of prosecution. On September 8, 2004, Judge Zakaib entered an order dismissing the case with prejudice for failure to prosecute under Rule 41(b). Through this appeal, Appellant seeks to have that dismissal order reversed and her case reinstated.

## II. Standard of Review

■ In syllabus point one of *Brent v. Board of Trustees of Davis and Elkins College*, 173 W.Va. 36, 311 S.E.2d 153 (1983), this Court held that

> Under W.Va.R.Civ.P. 41(b), in order to reinstate a cause of action which has been dismissed for failure to prosecute, the plaintiff must move for reinstatement within three terms of entry of the dismissal order and make a showing of good cause which adequately excuses his neglect in prosecution of the case.

In *Dimon v. Mansy*, 198 W.Va. 40, 479 S.E.2d 339 (1996), we affirmed this standard and acknowledged that "our scope of review, even where reinstatement is timely sought, is limited. It is only where there is a clear showing of an abuse of discretion that reversal is proper." *Id.* at 46, 479 S.E.2d at 345. Accordingly, we proceed to determine whether the trial court abused its discretion in dismissing Appellant's action under the provisions of Rule 41(b).[8]

---

**6.** Appellant argues that the Rule 41(b) motion was filed prematurely by one day. The record in this case proves otherwise, as the subject motion was filed with the trial court on November 5, 2003—a full year after the November 4, 2002, telephone conversation, the agreed-upon last procedural event that took place prior to the filing of the dismissal motion.

**7.** A mediator was obtained and mediation was scheduled for February 3, 2004. Unfortunately, the mediation did not go forward due to the nonappearance of Appellant's counsel. The explanation provided for counsel's non-participation, which this Court does not condone, was a misun-

derstanding regarding the nominal settlement authority that was available. Appellant's counsel has indicated that he understood the representation by one of the Appellees as to the amount of its settlement authority to be the cumulative figure representing the total settlement authority for all of the Appellees.

**8.** That rule provides in pertinent part:

> Any court in which is pending an action wherein for more than one year there has been no order or proceeding, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such

## III. Discussion

Appellant argues that the trial court, in granting the dismissal sought by Appellees,[9] failed to properly consider the facts underlying the non-prosecution of her case. Specifically, she notes that the dismissal order entered by Judge Zakaib does not contain even one reference to the serious career-ending illness of her former counsel, Mr. Robert Taylor. The complete absence of any reference to this proffered explanation for the lack of activity following the lifting of the bankruptcy stay certainly raises a concern in this Court's collective mind as to the manner in which the trial court balanced the factors pertinent to the issue of the Rule 41(b) dismissal. While we do not mean to suggest that Mr. Taylor's illness should be construed as an excuse for any lapse in the prosecution of Appellant's case that may have taken place prior to December 2002 when Mr. Taylor was forced to stop practicing law for heath reasons, it certainly provides a colorable explanation for the languishing of her case after December 2002. For the trial court not to have addressed in some fashion the effect this factor may have had on the prosecution of Appellant's case is troubling to this Court.

In reviewing the procedural chronology of this case, it is clear that the earliest point in time from which the issue of Appellant's failure to prosecute can be examined is late October 2002 when Mr. Taylor learned of and notified the other parties of the lifting of the bankruptcy stay. Despite this seemingly obvious starting point for evaluating any claim predicated on failure to prosecute, Judge Zakaib in the memorandum opinion and order dismissing this case reaches back to August 1999 in discussing "plaintiff's inactivity."[10] This is puzzling especially in light of the fact that in the order entered on April 20, 2001,

certifying questions to this Court pertinent to Appellant's case, the trial court ruled: "That good cause has been shown to continue the trial of this case and to stay any further actions until the parties can certify the aforesaid four (4) questions to the West Virginia Supreme Court."

In addition to the problematical reaching to August 1999 for purposes of the dismissal motion, Appellant also argues that she specifically requested a trial date before the granting of the dismissal and was denied the opportunity to proceed to trial. During the course of the hearing on January 15, 2004, Mr. Welch stated "we're ready to go forward with it." When the trial court stated "I've got a trial date next week, do you want to try it next week?" Mr. Welch responded, "I'll try it whenever you want me to try it, Judge." Probing further, Judge Zakaib inquired "if I were not to dismiss it, what would you do?" To which, Mr. Welch stated, "We'd go to trial." Despite this admission of willingness to proceed to trial on Appellant's part, no trial date was set by Judge Zakaib.

Another ground on which Appellant relies to challenge the lower court's dismissal is the issue of whether Appellees demonstrated substantial prejudice resulting from the delay in prosecuting the case. This Court held in *Gray v. Johnson*, 165 W.Va. 156, 267 S.E.2d 615 (1980), that "[i]nvoluntary dismissal for failure to prosecute should only occur where there is lack of diligence by a plaintiff and demonstrable prejudice to defendant." *Id.* at 163, 267 S.E.2d at 619. In *Dimon*, we expounded on *Gray* to quantify the amount of prejudice that must be demonstrated by a defendant to support a dismissal on Rule 41(b) grounds as "substantial." 198 W.Va. at 43, 479 S.E.2d at 342, syl. pt. 3.

---

action to be struck from its docket; and it shall thereby be discontinued. . . . The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may [be] entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid. W.Va.R.Civ.P. 41(b).

9. By the time Judge Zakaib made his ruling, Appellees CAMC and Shawnee Hills had also filed motions to dismiss under Rule 41(b).

10. During the hearing on January 15, 2004, the trial judge stated:

what you have here is nothing of any real substance was done on this case by the Plaintiffs since August of '99. That's the thing you have going against you, '99, a thousand, thousand-one, thousand-two, thousand-three. We're talking about four years.

In its dismissal order, the trial court does not make a finding that Appellees demonstrated the requisite degree of prejudice. Rather than making any factual findings as to showings by the individual Appellees on this critical element of substantial prejudice, the trial court refers to "presumed prejudice" resulting from the temporal delays that resulted in this case. In recognizing the nine-year delay between the events underlying the cause of action and a potential trial on the claims, Judge Zakaib states that "none of the participants will be testifying with direct recollection" and notes that "the defense of this matter *may* well be prejudiced by the passage of time, as may the prosecution as well." (emphasis supplied) The problem with simply relying on the passage of time as proof of the necessary element of prejudice is that it fails to properly recognize and consider other events which clearly contributed to the delay. Given both the certification of questions to this Court as well as the bankruptcy proceedings involving one of the parties, this case, in all likelihood, was never going to be tried before sometime in 2003. So it strikes this Court as somewhat unfair to Appellant that only one year later— in 2004—Appellees are asserting prejudice and unilaterally casting blame on Appellant for the delay in bringing this matter to trial. The temporal delays which prevented this case from proceeding to trial cannot be singularly imposed on Appellant. The parties jointly must bear responsibility for the delays that resulted due to the trial court's certification of questions to this judicial body. And no individual party is responsible for the delay resulting from the filing of bankruptcy by Appellee Shawnee Hills. Our review of the record does not demonstrate that Appellees demonstrated "substantial" prejudice as a direct result of Appellant's failure to prosecute this case.[11]

■ As support for the granting of the Rule 41(b) motion, Appellees argue that this Court made clear in *Childress v. Thompson*, 200 W.Va. 342, 489 S.E.2d 499 (1997), that attorney illness cannot be relied upon as

good cause for lack of prosecution where other firm attorneys are available to manage a case. *See id.* at 345, 489 S.E.2d at 502. That decision, unlike this one, concerned the failure of counsel to effect service of process of the complaint on the defendant over a fifteen-month period. The only facts provided regarding the attorney illness at issue in that case are that the trial court "examined that contention and determined that the illness did not constitute good cause for the delay." *Ibid.* Standing alone, *Childress* does not prevent a circuit court from finding an attorney's illness to constitute good cause for non-prosecution. Instead, it recognizes the distinction between firm practitioners and private practitioners, as far as the availability of alternate counsel in the event of an attorney's illness. Regardless of the availability of other attorneys, a trial court must still weigh the factors presented on the issue of good cause and make a determination based on the specific facts of each case in which a Rule 41(b) dismissal is properly challenged. *See Dimon,* 198 W.Va. at 45, 479 S.E.2d at 344 (cautioning that "court's authority to issue dismissals as a sanction must be limited by the circumstances and necessity giving rise to its exercise").

■ Having fully considered the facts of this case which include the rare event of a fifty-one-year-old attorney being forced to prematurely end his career due to a serious heart ailment, against all the contributing facts which explain most of the delays that occurred in the prosecution of this case, we find that the lower court abused its discretion in determining that Appellant had not shown good cause for the delay and in finding that the Appellees were prejudiced by Appellant's lack of prosecution of this case. As we explained in *Dimon*, "[b]ecause of the harshness of the sanction, a dismissal with prejudice should be considered appropriate only in flagrant cases." 198 W.Va. at 45, 479 S.E.2d at 344. This case presented an unusual number of explanations for the lengthy period between the case's filing and the entry

---

11. In making this conclusion, we are not unappreciative of the issues impacting on a trial of this matter, such as the difficulty of locating witnesses and the potential need for new expert witnesses. Critically, however, these complications are clearly attributable more to the passage of time than solely to any lack of prosecution on Appellant's part.

of the dismissal order, including an extended absence of the trial court from the bench due to illness.[12] Given these specific facts, we cannot conclude that Appellant should be denied the opportunity to have her case resolved on its merits.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby reversed.

Reversed.

12. Judge Zakaib was unavailable due to illness from the period of February 14, 2003, to April 7, 2003.