IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0458

_____

FILED

**March 31, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE EX REL. WEST VIRGINIA UNIVERSITY HOSPITALS, INC., WEST
VIRGINIA UNIVERSITY BOARD OF GOVERNORS, ALLISON TADROS, M.D.,
and RACHEL POLINSKI, M.D.,
Defendants Below, Petitioners

v.

HON. PHILLIP D. GAUJOT, Judge of the Circuit Court of Monongalia County, and
REBECCA MORRIS, Administratrix of the Estate of Bryan Morris,
Plaintiff Below, Respondent

_____

WRIT GRANTED AS MOULDED

_____

Submitted:  January 11, 2023
Filed:  March 31, 2023

Christine S. Vaglienti, Esq.
Melissa K. Oliverio, Esq.
West Virginia United Health System, Inc.
Morgantown, West Virginia
Counsel for Petitioner West Virginia
University Hospitals, Inc.

Timothy R. Linkous, Esq.
Linkous Law, PLLC
Morgantown, West Virginia
Counsel for Petitioners
West Virginia University Board of
Governors, Allison Tadros, M.D., and
Rachel Polinski, M.D.

Arden J. Curry, II, Esq.
Pauly Curry, PLLC
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     " '[T]his Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction.' Syllabus Point 1, in part, *James M.B. and Lawrence E.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995)." Syllabus Point 3, *Southern Environmental, Inc. v. Bell*, 244 W. Va. 465, 854 S.E.2d 285 (2020).

2.     "An order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable." Syllabus Point 8, *Aetna Ca. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

3.     "Under W. Va. Code, 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." Syllabus Point 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995).

4.     "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the

i

desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

4.    "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984).

WALKER, Chief Justice:

West Virginia University Hospitals (WVUH) was sued by the estate of Bryan Morris for the alleged negligence of two emergency room physicians – one resident and one faculty physician – on a theory of ostensible agency. WVUH does not employ those physicians; rather they are employees of the West Virginia University Board of Governors (BOG). WVUH filed a motion to dismiss that was converted into a motion for summary judgment, arguing that it could not be held liable on a theory of ostensible agency under West Virginia Code § 55-7B-9(g). That code provision insulates non-employer health care providers from ostensible agency liability if the agent maintains a requisite amount of insurance coverage for the injury. Morris argued, and the circuit court agreed, that the amount of coverage listed in the statute had to be independently maintained by each agent physician-defendant. Because there were two physicians whose negligence allegedly contributed to the death of decedent and they shared a single limit policy, the circuit court concluded that they did not meet the coverage requirements of the statute so as to alleviate WVUH of ostensible agency liability.

Upon review, we determine that this was an improper interlocutory appeal. Even so, the circuit court's reading of West Virginia Code § 55-7B-9(g) as applied to these parties was clear error because it wholly failed to account for West Virginia Code § 55-7H-1 to -6 (BRIM statutes). Those BRIM statutes govern the insurance coverage of the defendant-physicians and cannot be reconciled with the circuit court's reading of West

1

Virginia Code § 55-7B-9(g).  For that reason, and in the interest of judicial economy, we convert this interlocutory appeal to a petition for a writ of prohibition and grant that extraordinary relief.[1]

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Decedent Bryan Morris presented to MedExpress with acute onset of chest and neck pain on November 23, 2019.  He was transferred by ambulance from MedExpress to the emergency department at WVUH where he was seen and evaluated by Dr. Allison Tadros, a faculty physician with the West Virginia University School of Medicine (WVUSOM), and Dr. Rachel Polinski, a resident physician.  Dr. Tadros supervised Dr. Polinski's treatment of Mr. Morris.  Mr. Morris was discharged from the WVUH emergency room and died the next day of an aortic dissection.

Mr. Morris's estate sued Dr. Tadros and Dr. Polinski, claiming that the physicians should have recognized a potential aortic dissection, ordered imaging, and surgically intervened to prevent Mr. Morris's death.  Dr. Tadros and Dr. Polinksi are employed by BOG, who was made party to the suit on a theory of vicarious liability.  Despite that Dr. Tadros and Dr. Polinski were not employees or insured by WVUH, the

---

[1] The Court appreciates the amici briefs submitted by the West Virginia Board of Risk Management, Mountain Health Network, Inc., and CAMC Health System, Inc.

estate sued WVUH on a theory of ostensible agency. There are no allegations against WVUH outside of ostensible agency.[2]

WVUH filed a motion to dismiss the complaint based on West Virginia Code § 55-7b-9(g), which precludes liability for ostensible agency claims brought against non-employers in medical professional liability cases, "unless the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least $1 million for each occurrence." WVUH argued that there was only one occurrence and that a policy with $1.5 million in coverage for the medical injury was provided through the West Virginia Board of Risk Management (BRIM) policy that insures Dr. Tadros and Dr. Polinski as employees of the BOG. But Morris contended that each individual ostensible agent (i.e., Dr. Tadros and Dr. Polinski) needed to maintain $1 million in coverage *each* before West Virginia Code § 55-7b-9(g) could operate to alleviate WVUH from liability for ostensible agency. Because there is a single shared-limit policy for both physicians alleged to be at fault, Morris argued the statute's prerequisites were not met. The circuit court agreed with Morris and denied WVUH's motion to dismiss, which it converted to a motion for summary judgment and

---

[2] In a separate lawsuit, the estate filed a claim against WVUH alleging infirmities with nursing care. That case is not before the Court and has no bearing on consideration of the merits of this case.

3

certified as a final order under Rule 54(b) of the West Virginia Rules of Civil Procedure. This appeal followed.

## II.  STANDARD OF REVIEW

Applying the appropriate standard of review requires us to examine how this case is before us.  Although the parties do not raise jurisdictional concerns, "this Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction."[3]  The order on direct appeal is a denial from a motion for summary judgment.[4]  And, "[a]n order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable."[5]  But here, the circuit court entered the order with certification that it met the criteria of Rule 54(b) of the West Virginia Rules of Civil Procedure.

---

[3] Syl. Pt. 3, *S. Env't, Inc. v. Bell*, 244 W. Va. 465, 854 S.E.2d 285 (2020) (quoting Syl. Pt. 1, in part, *James M.B. and Lawrence E.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995)).

[4] There is some question as to whether the circuit court's order denied WVUH's motion to dismiss or its motion for summary judgment.  From the order, it appears to have converted it to summary judgment. A denial from a motion to dismiss is likewise interlocutory, so we find the distinction immaterial.  *See, e.g., Credit Acceptance Corp v. Front*, 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013) (quoting *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 235, 503 S.E.2d 541, 548 (1998)).

[5] Syl. Pt. 8, *Aetna Ca. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

Articulating the "rule of finality," we have discussed that "[t]he usual prerequisite for our appellate jurisdiction is a final judgment, final in respect that it ends the case."[6] We have held that "[u]nder W. Va. Code, 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."[7] West Virginia Code § 58-5-1 (1998), in addition to capturing the jurisdictional threshold that is a final order, also references an exception to the rule of finality for orders entered consistent with Rule 54(b) of the West Virginia Rules of Civil Procedure. It provides, in relevant part, that

> [a] party to a civil action may appeal to the Supreme Court of Appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties.[8]

---

[6] *Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995).

[7] Syl. Pt. 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995).

[8] West Virginia Code § 58-5-1 has been amended to reflect the appellate jurisdiction of the Intermediate Court of Appeals since the Rule 54(b) order was entered in this case on May 12, 2021. The operative language relating to the rule of finality has remained unchanged throughout all versions.

5

We have discussed that "[b]y limiting appellate consideration to final judgments, the finality rule serves to avoid piecemeal review of trial court rulings which do not end litigation regarding all or some claims or parties in a case."[9] The circuit court here certified that its decision was a final order under Rule 54(b). That rule tracks the language of West Virginia Code § 58-5-1 and states:

> (b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* – When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Rule 54(b), therefore, permits the circuit court to certify, in multiparty or multiclaim litigation, that its ruling is an approximation of a final order as to one or more parties or one or more claims, despite that the overall action remains pending.

---

[9] *Vaughan v. Greater Huntington Park and Rec. Dist.*, 223 W. Va. 583, 587, 678 S.E.2d 316, 320 (2009).

But by certifying its order under Rule 54(b), the circuit court does not render it immediately appealable if it does not otherwise meet the criteria of the rule.[10] This order, while it may be the circuit court's final say on one of WVUH's *defenses*, does not dispose of any claim or any party, and so does not meet Rule 54(b)'s approximation of finality. Neither the circuit court nor the parties have authority to acquiesce to a Rule 54(b) interlocutory review because they cannot confer on this Court appellate jurisdiction: "[w]ith rare exception, the 'finality rule' is mandatory and jurisdictional."[11] Because the order on appeal disposes neither of a party to the litigation nor a claim, we conclude that it is a non-appealable interlocutory order unless some other exception to the rule of finality may be applied.

We have recognized that, in addition to Rule 54(b) orders, matters in prohibition, certified questions, and rulings appealable under the collateral order doctrine are exceptions to the rule of finality.[12] WVUH contends appellate review is also appropriate under the collateral order doctrine. Constituting a narrow exception to the rule of finality, "[a]n interlocutory order would be subject to appeal under the [collateral order]

---

[10] *See S. Env't*, 244 W. Va. at 475, 854 S.E.2d at 295 ("[T]he circuit court's declaration 'by itself does not satisfy the requirements of finality.'") (citation omitted)).

[11] *James M.B.*, 193 W. Va. at 292, 456 S.E.2d at 19.

[12] *Adkins v. Capehart*, 202 W. Va. 460, 463, 504 S.E.2d 923, 926 (1998).

doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment."[13] The collateral order doctrine has most frequently been applied in granting review of denials of governmental immunity but has also been applied in the context of an order denying a motion to compel arbitration.[14] In refusing to review this order under the collateral order doctrine, we are mindful both that the doctrine's principal characteristic is its narrow application and that WVUH's defense to liability for the ostensible agency claim does not become an "immunity" simply by dubbing it so.

Under different circumstances, we would dismiss the case as improvidently granted. But here, extraordinary relief in prohibition is an exception to the rule of finality that may be properly applied. We have previously converted a direct appeal to a petition for a writ of prohibition, and, conversely, a writ of prohibition into an appeal, under Rule 2 of the West Virginia Rules of Appellate Procedure.[15] We conclude that in this case,

---

[13] *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566 n.2, 401 S.E.2d 908, 912 n.2 (1991) (internal quotations and citation omitted).

[14] *See, e.g.*, Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009); Syl. Pt. 1, *Credit Acceptance Corp.*, 231 W. Va. 518, 745 S.E2d 556.

[15] *See CMS Mine Repair & Maint., Inc. v. Miklos*, 238 W. Va. 707, 711, 798 S.E.2d 833, 837 (2017) (converting appeal to prohibition); *State ex rel. Lloyd v. Zakaib*, 216 W. Va. 704, 705 n.1, 613 S.E.2d 71, 72 n.1 (2005) (converting prohibition to appeal); *State ex*

8

judicial economy outweighs the parties' procedural failure to bring the case as one invoking our original jurisdiction for three reasons.

First, we have a suitable order for review with sufficient findings of fact and conclusions of law; the circuit court was clearly contemplating that the order would be subject to appellate review in certifying its ruling for immediate appeal under Rule 54(b).[16] Second, the order on appeal was entered in May 2021 and bypassed review by the Intermediate Court of Appeals by a matter of weeks. By converting our review of this order to one of prohibition, rather than dismissing the case as an interlocutory appeal, we hold the merits to a higher standard of proof and merely change the basis of our jurisdiction

---

*rel. Register-Herald v. Canterbury*, 192 W. Va. 18, 19 n.1, 449 S.E.2d 272, 273 n.1 (1994) (converting appeal to prohibition); *see also Cabell Cnty. Comm'n v. Whitt*, 242 W. Va. 382, 391, 836 S.E.2d 33, 42 (2019) (recognizing availability of converting appeal to prohibition); *Walker v. Option One Mortg. Corp.*, 220 W. Va. 660, 668, 649 S.E.2d 233, 241 (2007) (Davis, C.J., dissenting) ("To the extent that the majority felt compelled to address the merits of the issues presented, they should have done so, as urged in the plaintiff's brief, by treating the appeal as a request for a writ of prohibition and reviewed the case under the standard for that writ.").

[16] In *State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W. Va. 358, 508 S.E.2d 75 (1998), this Court addressed the circuit court's duty to render findings sufficient for appellate review in non-appealable interlocutory rulings, such as a denial of a motion to dismiss. In concluding the circuit courts were under no such duty, at syllabus point 6, *Gaughan* established a procedure requiring the party intending to seek extraordinary relief to request an order with sufficient findings to permit appellate review. *See State ex rel. Vanderra Res. v. Hummel*, 242 W. Va. 35, 44-45, 829 S.E.2d 35, 44-45 (2019) (concluding rule to show cause improvidently granted for failure to request an order detailing findings of fact and conclusions of law consistent with *Gaughan*).

to avoid perfunctory dismissal. If WVUH were to refile seeking a writ of prohibition, those matters are reviewable by this Court alone, so there is no concern of circumventing review of the Intermediate Court of Appeals. In a similar vein, we note that the significant delays to the underlying litigation as well as the second pending matter between WVUH and Morris – consolidation of which may bear on the issues decided in this case – both weigh in favor of conversion as a simple matter of judicial economy.

Third, we acknowledge that extraordinary relief is not a substitute for appeal.[17] In this case, however, we find clear error of law meeting the heightened writ standard in the circuit court's failure to reconcile the BRIM statutes with its reading of West Virginia Code § 55-7B-9(g).[18] Having ample briefing both from the parties and amici on this singular issue, we exercise our discretion to view the parties' arguments under the lens of prohibition.

Our standard of review for extraordinary relief in prohibition is as follows:

---

[17] *See* Syl. Pt. 3, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) ("Prohibition . . . may not be used as a substitute for [a petition for appeal] or certiorari.") (internal quotations and citation omitted)); *Handley v. Cook*, 162 W. Va. 629, 631, 252 S.E.2d 147, 148 (1979) ("It is well established that prohibition does not lie to correct mere errors and cannot be allowed to usurp the functions of appeal, writ of error, or certiorari.") (citations omitted).

[18] *See Whitt*, 242 W. Va. at 391, 836 S.E.2d at 42 (refusing to convert appeal to prohibition because errors raised did not meet standard for issuance of writ).

10

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[19]

## III. ANALYSIS

Under the title of "Several Liability," West Virginia Code § 55-7B-9(g) (2016) creates the defense to liability for medical professional liability at issue in the case, and provides:

Nothing in this article is meant to preclude a health care provider from being held responsible for the portion of fault attributed by the trier of fact to any person acting as the health care provider's agent or servant or to preclude imposition of fault otherwise imputable or attributable to the health care provider under claims of vicarious liability. A health care provider may not be held vicariously liable for the acts of a nonemployee pursuant to a theory of ostensible agency unless

---

[19] Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12.

11

the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least $1 million for each occurrence.

Relying on the second sentence above, WVUH argues that it may not be held liable for the alleged negligence of Drs. Tadros and Polinski because it is not their employer and because there is $1.5 million dollars in insurance coverage for the single occurrence provided by BRIM. Morris responds that the statute contemplates a single "agent" and requires Dr. Tadros and Dr. Polinksi to have individual policies in excess of $1 million dollars each before WVUH meets the requirements of the statute. Because Drs. Tadros and Polinksi have a single, shared-policy limit of $1.5 million, Morris argues WVUH is not relieved of liability for ostensible agency under the plain terms of the statute.

In analyzing the statute, the circuit court agreed with Morris that the focus is on the word "agent" rather than the "occurrence." And, the circuit court found that there was no statement in the statute that the minimum insurance limits apply "without respect to the number of physicians involved" as do other provisions of the MPLA.[20] Because the

---

[20] We note that the references to other provisions of the MPLA containing this language relate to caps on damages, not to insurance coverage and that WVUH relies on these provisions for a different reason – to show that the term "occurrence" is consistently applied throughout the MPLA without regard to the number of defendants.

MPLA is in derogation of the common law,[21] the circuit court determined it should read the statute to effectuate the least change to the common law[22] and concluded that the statute required individual policies in excess of $1 million dollars for the single injury.

We resist the urge to generally interpret West Virginia Code § 55-7B-9(g) beyond its application to these defendant-physicians because the circuit court's interpretation cannot be reconciled with the other, more specific statutory provisions to which they (and WVUH as nonemployer) are bound.[23]  The circuit court's failure to reconcile its reading of West Virginia Code § 55-7B-9(g) with the BRIM statutes that set forth specific coverage requirements for the defendant-physicians and the correlating provisions setting statutory parameters on WVUH's employment of those defendant-physicians is a clear error of law and we issue a writ of prohibition consistent with that finding.

---

[21] *Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W. Va. 484, 492, 647 S.E.2d 920, 928 (2007) (concluding MPLA is in derogation of the common law).

[22] *Id.* at Syl. Pt. 5 ("Where there is any doubt about the meaning or intent of a statute in derogation of the common law, the statute is to be interpreted in the manner that makes the least rather than the most change in the common law.").

[23] Though the parties deny the existence of ambiguity and argue for "plain language" application, they rely on principles of statutory construction and legislative intent that first require a finding of ambiguity.  We would encourage the Legislature to resolve the ambiguity in the statute as applied to multi-agent cases.

13

The primary flaw in Morris's argument is the faulty premise that WVUH is "legally no different than any other 70+ private hospitals operating in the State of West Virginia." To the contrary, WVUH is materially different. We recognized in *Queen v. West Virginia University Hospitals* that the Legislature, in West Virginia Code § 18-11C-1 to -10, mandated the creation of WVUH as a nonstock, not-for-profit corporation under the general corporation laws of the state, it previously being owned and operated by the State of West Virginia.[24] Under the provisions of its creation, WVUH may extend privileges *exclusively* to WVUSOM faculty who are employed by the BOG.[25] This is an important distinction for purposes of examining West Virginia Code § 55-7B-9(g) because that statute examines the insurance coverage of the "agent," not the non-employer. Bound as it is to choose its medical staff from WVUSOM faculty, WVUH does not control the insurance coverage of its ostensible agents, statute does.

Drs. Tadros and Polinksi, as employees of the BOG, are insured by BRIM. Under West Virginia Code § 55-7H-4,

> The State Board of Risk and Insurance Management shall provide medical professional liability insurance to all of the state's medical and dental schools, state medical school, all of their clinical practice plans and all of their directors, officers,

---

[24] 179 W. Va. 95, 365 S.E.2d 375 (1987).

[25] W. Va. Code § 18-11C-4(c) ("The university faculty shall have exclusive medical and dental staff privileges at the existing facilities and, subsequently, at the new facilities.").

employees, agents and contractors in an amount to be determined by [BRIM], but in no event less than $1.5 million for each occurrence after July 1, 2015, to increase to account for inflation by an amount equal to the Consumer Price Index published by the United States Department of Labor, up to $2 million for each occurrence.

That provision further states that

*Any judgment* obtained for a medical injury to a patient as a result of health care performed or furnished, or which should have been performed or furnished, by any employee or contractor of a state's medical and dental school, state medical school or clinical practice plan *shall not exceed the limits of medical professional liability insurance coverage provided by the State Board of Risk and Insurance Management* pursuant to this section.

(emphasis added). Stated differently, the defendant-physicians are insured per *occurrence* in an amount in excess of $1 million dollars – an amount that the Legislature has deemed adequate to cover damages resulting from a single medical injury, up to and including death.[26] Any *judgment* beyond that amount may not be enforced.

West Virginia Code § 55-7H-3, provides in relevant part that

all . . . employees . . . of a state's medical . . . school[] . . . are only liable up to the limits of insurance coverage procured through [BRIM] in accordance with [§55-7H-4] . . . arising from a medical injury to a patient, including death resulting, in whole or in part, from the medical injury, either through act or

---

[26] *See* W. Va. Code § 55-7H-1 ("The Legislature finds and declares . . . That it is further reasonable and appropriate to require the state's medical and dental schools to maintain a level of medical professional liability insurance to adequately and fairly compensate patients who suffer medical injuries or death.").

15

> omission, or whether actual or imputed, while acting within the scope of their authority or employment for a state's medical . . . school[]. . . .

And,

> The provisions of this article apply to the acts and omissions of all full-time, part-time, visiting and volunteer directors, officers, faculty members, residents, fellows, students, employees, agents and contractors of a state's medical . . . school[] . . . regardless of whether the *persons* are engaged in teaching, research, clinical, administrative or other duties *giving rise to the medical injury* . . . .

The BRIM statutes dictate coverage by occurrence, not by individual defendant. The BRIM statutes further contemplate that "each occurrence" means a single medical injury (here, death), and that any judgment, regardless of the number of defendants, may not be in excess of the BRIM policy limits.

The BRIM statutes cannot be reconciled with the circuit court's reading of West Virginia Code § 55-7B-9(g), and, as the more specific, control the analysis: "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."[27] The only reading of West Virginia Code § 55-7B-9(g) that is reconcilable with the BRIM statutes is to read it with emphasis on "medical injury," "occurrence," and

---

[27] Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984).

16

"aggregate," and to apply the definition of "occurrence" in the MPLA.[28]  That is, that "occurrence" means a medical injury, including death, and regardless of the number of defendants, these agents are insured and may be held liable only up to a single shared-limit policy of $1.5 million dollars by mandate of the Legislature.

Crucially, the allegations of negligence in this case are shared in that they are superimposed based on the resident-to-attending relationship in a teaching hospital setting. We are not operating under the hypothetical set of doomsday facts set forth by Morris where there are separate acts of negligence or physicians who have separate insurance policies where the hospital is scrambling to aggregate $1 million in coverage to avoid ostensible agency liability.  Instead, we have physicians whose relationship to one another, relationship to WVUH, and insurance coverage is set by clearly defined statutes.  Morris has made no responsive argument to the inability to reconcile its reading of West Virginia Code § 55-7B-9(g) and the BRIM statutes, content to ignore their existence, relevance, and controlling nature.  We conclude that the BRIM statutes preclude a reading of West Virginia Code § 55-7B-9(g) that requires BRIM to write separate policies in excess of $1

---

[28] Under West Virginia Code § 55-7B-2, " 'Occurrence' means any and all injuries to a patient arising from the health care rendered by a health care facility or a health care provider and includes any continuing, additional, or follow-up care provided to that patient for reasons relating to the original health care provided, regardless if the injuries arise during a single date or multiple dates of treatment, single or multiple patient encounters, or a single admission or a series of admissions."

17

million dollars for these defendant-physicians. The agents have the requisite coverage by legislative design, and under the facts of this case WVUH is properly insulated from ostensible agency liability. We therefore find that the circuit court's denial of WVUH's motion for summary judgment was clear legal error.

Writ granted as moulded.